IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAUDE CHI, ET AL.,<br><br>Defendant. | Case No. 22-00261-01/03-CR-W-RK |

**THE UNITED STATES OF AMERICA'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR JUDICIAL NOTICE, ADVANCED MOTION IN LIMINE TO ADMIT EVIDENCE, AND <u>PROPOSED THEORY OF DEFENSE FOR TRIAL</u>**

The United States of America, through Assistant United States Attorneys, Sean T. Foley and Joseph M. Marquez, and National Security Division Trial Attorney, Dmitriy Slavin, files these Suggestions in Opposition to Defendants Claude Chi, Francis Chenyi, Sr., and Lah Langmi's (collectively "Defendants") Joint Motion for Judicial Notice, Advanced Motion in Limine to Admit Evidence, and Proposed Theory of Defense at Trial ("Motion").

I. <u>INTRODUCTION & BACKGROUND[1]</u>

On November 18, 2022, Defendants were indicted in multiple counts all of which relate to their actions within the United States to raise funds for, provide equipment to, and collect ransoms on behalf of separatist fighters waging an internal and ongoing violent crisis within the Anglophone region in Cameroon. *See generally* Doc. 1. Defendants are alleged to have solicited and raised funds for equipment, supplies, weapons, and explosive materials to be used

---

[1] The United States would refer this Court to, and incorporate herein, both the factual background and arguments made by the United States in its Suggestions in Opposition to Defendant Claude Chi's Motion for Reconsideration of Detention Order, Doc. 61, the United States' Response in Opposition to Defendant Francis Chenyi, Sr.'s Motion to Dismiss, Doc. 116, and the United States' Response to Defendant Francis Chenyi, Sr.'s Objections to the Report and Recommendation Denying his Motion to Dismiss, Doc. 130.

in attacks against Cameroonian government personnel, security forces, and property, and in kidnapping civilians believed to be enabling the Cameroonian government or insufficiently supporting the separatists. These funds were raised through online chat applications and payment platforms from individuals located in the United States and abroad. The funds were then transferred from various financial and cryptocurrency accounts controlled by Defendants through intermediaries to the separatist fighters to support attacks in Cameroon.

In addition to the funds raised through voluntary donations, Defendants conspired with others to kidnap civilians in Cameroon and hold them for ransom. In some instances, United States citizens were extorted for ransom payments to secure the release of their kidnapped relatives living in Cameroon. Doc. 24. These ransom demands were couched as fines for violating rules imposed by the separatist groups and for failing to make contributions to the separatist cause. Doc. 24. In at least one instance, Defendants coordinated and personally received the ransom payment from a U.S.-based victim and informed the kidnappers located in Cameroon when the ransom payment was received. Doc. 24.

The Indictment alleges in Count One that Defendants illegally conspired while within the United States to provide material support and resources to others to aid in carrying out a conspiracy to kill, kidnap, or maim persons in a foreign country, in violation of 18 U.S.C. § 956(a), and conspire to use a weapon of mass destruction outside of the United States, in violation of 18 U.S.C. § 2332(a). In Count Two, the Indictment alleges that Defendants attempted to provide and did provide material support and resources while within the United States to others intending that they be used to prepare for and carry out a conspiracy to use a weapon of mass destruction outside of the United States in violation of 18 U.S.C. § 2332(a). *See* Doc. 1. Count Three alleges that Defendants received money for a ransom demand for the release of a person who had been

2

Case 4:22-cr-00261-RK    Document 146    Filed 03/07/25    Page 2 of 17

kidnapped. Doc. 1. Finally, Count Four alleges a money laundering conspiracy to promote the carrying out of specified unlawful activities, namely conspiring to use a weapons of mass destruction abroad and conspiring to kill, kidnap, or maim persons in a foreign country.

Defendants' Motion has various parts. It first requests the Court take judicial notice of alleged "facts" ("Requested Facts") and documents attached as Exhibits ("Documents") and admit the Requested Facts and Documents at trial to be read to the jury. *See* Doc. 142 at 1-5; Doc. 142-1 through 142-6. The Requested Facts and Documents, generally speaking, detail and discuss the history of, and atrocities committed by, the parties to the ongoing, internal violent crisis in Cameroon. While a small number of the Requested Facts are relevant, the vast majority of them, and all of the Documents, are irrelevant to the issues actually before the Court in this litigation. They appear aimed at undergirding defenses—the lawful combatant immunity defense, self-defense, defense of others, and their purported Theory of Defense—which are unavailable as a matter of law. Last, the Requested Facts appear to selectively quote portions favorable to the separatists Defendants supported while omitting portions unfavorable to them. Permitting only the favorable portions to be noticed and read to the jury makes the inferences sought disputed, incomplete, and prejudicial.

The Motion next requests a Theory of Defense instruction that must be denied.[2] The request here is an attempt to repackage and deliver in a different vehicle an argument this Court

---

[2] Different Defendants at various stages in this case have sought to obtain various theories of defense. As noted, this proposed Theory of Defense relating to the "element", which does not exist, under 2339A to further "terrorists" has already been rejected. *See* Doc. 126 at 7-10; Doc. 133 (adopting the Report and Recommendation in full). This theory arose after this Court twice ruled or intimated that it "did not find persuasive" that Defendants could justify their actions under the "lawful combatant immunity defense." Doc. 101 at 3-4; *see also* Doc. 126 at 10 ("As the combatants in the case before this Court were fighting in a non-international armed conflict, the lawful combatant immunity defense does not provide a basis for dismissal of Counts One and Two of the Indictment."). The United States believes that the briefing here about the new proposed Theory of Defense should lead this Court in its Order to preclude the Defendants from obtaining an instruction on their Proposed Theory of Defense. The United States also believes this Court's prior rulings concerning the application of lawful combatant immunity should preclude Defendants from obtaining that instruction too. Out of an abundance of caution, the United States soon will formally

3

already explicitly rejected. *Compare* Doc.126 at 7-10 *with* Doc. 142 at 6. Defendants contend they are entitled to a Theory of Defense that "negates *the element* of specific intent to aid a terrorist organization or activity, an *element* in each Circuit with a model instruction for 18 U.S.C. 2339A." Doc. 142 at 6 (emphasis added). However, this Court—correctly and at the Government's urging—denied Chenyi's Motion to Dismiss that attempted this *exact same argument*. This Court ruled that dismissal was not warranted because "[t]here is no language in section 2339A(a) that would require the government to prove that the material support or resources went to or were intended for a group designated as a terrorist organization." Doc. 126 at 9; Doc. 133. Thus, there is no "element of specific intent to aid a terrorist organization or activity" that Defendants are able to reject, and their Theory of Defense accordingly has to be denied.

II. **ARGUMENT & AUTHORITIES**

    A. *This Court Should in Large Part Deny Defendants' Motion for Judicial Notice and Advanced Motion in Limine to Admit Evidence.*

        i. *Requested Facts for Judicial Notice*

Under Federal Rule of Evidence 201(b), a court may take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017). For instance, a judicially noticed fact "could include, for example, 'well-established scientific theories and principles'" like the undisputable fact that radium is a solid element that emits alpha particles. *See Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 704 (E.D. Mo. 2018) (quoting *Williams*, 845 F.3d at 904).

---

move in limine for a specific order precluding the lawful combatant immunity theory of defense, but believes this Court in this Order can deny the Defendants' requested instruction on this Theory of Defense.

4

However, "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009) (*quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc*., 146 F.3d 66, 70 (2d Cir. 1998)). This Court must exercise the utmost "[c]aution . . . to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules." *Am. Prairie Const. Co.*, 560 F.3d at 797.

Some "facts" cannot be judicially noticed. Facts cannot be judicially noticed if they "are irrelevant to the resolution of [the] case." *Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir. 2010); *United States v. Peck*, 161 F.3d 1171, 1174 (8th Cir.1998) ("The court also correctly declined to take judicial notice of other irrelevant materials."). Indeed, the Hon. D. Gregory Kays observed that "the Eighth Circuit has repeatedly made clear that the Court should not take judicial notice of irrelevant materials or facts." *Rightchoice Managed Care*, *Inc. v. Hosp. Partners, Inc.,* No. 5:18-CV-06037-DGK, 2021 WL 4258753, at *1 (W.D. Mo. Sept. 17, 2021). Even if a fact is relevant, it should not be judicially noticed if it fails the Rule 403 balancing test—that is, if it is "unfairly prejudicial." *Id.* at *2; *see also Am. Prairie Const. Co.*, 560 F.3d at 797.

Judicial notice also is not appropriate when the facts or documents are "offered for the truth of the matters within them and inferences to be drawn from them and the opposing party disputes those matters." *N. Oil & Gas, Inc. v. EOG Res., Inc*., 970 F.3d 889, 895 n.6 (8th Cir. 2020). The dispute can center on either the "facts" themselves or the "inferences that the [party] attempt[s] to establish through the documents." *Kushner v. Beverly Enterprises, Inc*., 317 F.3d 820, 832 (8th Cir. 2003).

Many of the Requested Facts below are irrelevant for one of two reasons. Most have nothing to do with the resolution of the criminal violations at issue. Others appear geared to support defenses that are unavailable as a matter of law; because the defenses are unavailable, the "facts" to support them are irrelevant.

The United States also disputes some of the Requested Facts, and many of the inferences from them that Defendants appear poised to argue. The Requested Facts do not ask the Court to read to the jury portions of the source not favorable to the separatists' cause, just those placing the moral justifications of their cause—which is irrelevant to the resolution of the charges anyway—in an auspicious light. Thus, the United States objects to the inferences and believes reading some portions of a largely irrelevant secondary source, while omitting others, fails a Rule 403 balancing test.

> *1. The Department of State initially designated Cameroon for "temporary protected status" because of ongoing armed conflict and extraordinary and temporary conditions in Cameroon that prevented nationals of Cameroon from returning in safety. See Designation of Nationals of Cameroon for Temporary Protected Status, Department of Homeland Security, 2022-12229 (87 FR 34706), published June 7, 2022, (available online at https://www.federalregister.gov/documents/2022/06/07/2022-12229/designation-of-cameroon-for-temporary-protected-status ).[]*

Government's Response: This is about refugee admissions, which are not at issue in this case. While it shows that the United States is sympathetic to populations affected by this violent crisis, that sympathy is irrelevant to this litigation. This fact is also incorrect because the document cited appears produced not by the Department of State, but the Department of Homeland Security.

> *2. The extreme violence between government forces and armed separatists in the English-speaking regions (Northwest and Southwest) of Cameroon, as well as deadly attacks by the terrorist organization Boko Haram (including its breakaway faction, ISIS-West Africa (ISWAP) and vigilante self-defense groups in the Far North Region) continue to negatively impact the populations in the affected regions and beyond. Id.*

Government's Response: While the United States is sympathetic to populations affected by this violent crisis, this fact is irrelevant to this litigation.

> 3. *Thousands of people have been killed in the English-speaking regions, and hundreds of thousands more remain in internally displaced person camps, while tens of thousands have sought refuge in the neighboring country of Nigeria. Id.*

Government's Response: While the United States is sympathetic to populations affected by this violent crisis, this fact is irrelevant to this litigation.

> 4. *Moreover, the government has increased restrictions on political opposition groups and civil society and there are reports that the government of Cameroon has committed human rights violations and abuses. Id.*

Government's Response: While the United States is sympathetic to populations affected by this violent crisis, this fact is irrelevant to this litigation. This is a hearsay statement as well. Moreover, the United States objects to the inference sought from this "fact." The same document provides the following:

> *Separatist groups kill security forces and commit serious abuses against civilians, including unlawful killings, often involving mutilations.[12] They have targeted civil servants, relatives of members of defense and security forces, and ordinary people who fail to adhere to lockdowns (referred to as "ghost towns") and instructions to close schools.[13] Ghost town operations require businesses to close and residents to largely stay home, limiting much economic activity. As of September 2021, "deadly attacks by various separatist groups on military posts and vehicles of the Cameroonian army continue to be a daily occurrence." [14]*

Defendants appear to seek notice of this Requested Fact to infer that, because the government of Cameroon has committed human rights abuses, the Defendants' actions within the United States to provide material support to commit certain enumerated offenses is somehow justified or lawful. That is an improper defense, making this fact irrelevant. And the inference they sought is incomplete because it seeks "notice of human rights violations and abuses"

7

committed "by the government of Cameroon," but does not seek notice of alleged atrocities committed by their group.

> 5. *The English-speaking regions—the Southwest and Northwest—make up approximately 20% of the country's population. The two regions continue to suffer from extreme violence, a crisis more severe than any other in contemporary Cameroon. Id.*

Government's Response: While the United States is sympathetic to populations affected by this violent crisis, this fact is irrelevant to this litigation.

> 6. *In 2016, the peaceful protests calling for federalism led to fighting and to a demand for full independence after the government clamped down on protest leaders. Id.*

Government's Response: The United States believes that the basis of the conflict is relevant and can be properly explained to the jury.

> 7. *On October 1, 2017, separatist groups unilaterally declared an independent state called the Republic of Ambazonia. Id.*

Government's Response: The United States believes that the basis of the conflict is relevant and can be properly explained to the jury.

> 8. *The Republic of Ambazonia is also referred to as Southern Cameroons. The Ambazonian Restoration Forces (ARF) is the military wing of the de facto government of Southern Cameroons.*

Government's Response: While the Defendants' involvement in the Ambazonian Restoration Forces ("ARF") and the ARF's history and military activities are relevant, the United States disputes that the ARF "is the military wing of the de facto government of Southern Cameroons." This proposed fact is uncited. According to a 2021 article from Foreign Policy, "The Ambazonia Governing Council is only one of several groups that comprise the bitterly divided

8

secessionist movement in Cameroon."[3] This "fact" moreover appears an attempted backdoor into arguing the lawful combatant immunity defense that this Court has rejected. It attempts to falsely paint the crisis as a conflict between two opposing militaries. As the evidence in this case will show at trial, the ARF is far from an organized military and there is no dispute this crisis is non-international.

> *9. Since 2017, confrontation between government forces and separatists has killed more than 3,000 people, forced over 900,000 people from their homes, and kept around 800,000 children out of school. In 2020, the United Kingdom Home Office report assessed, "[o]ne in 3 people in the Anglophone regions are in need of humanitarian aid, including assistance with education, food, healthcare, shelter, water and sanitation. Many of the internally displaced persons (IDPs) remain in the English-speaking regions, hiding in remote bush areas. Sexual assault, exploitation and rape are frequently reported by female IDPs, and humanitarian assistance is hampered by the volatile security situation, especially in remote areas." Id.*

Government's Response: While the United States is sympathetic to populations affected by this violent crisis, this fact is irrelevant to this litigation. This is a hearsay statement as well not subjected to cross examination.

## ii. Documents for Judicial Notice

Defendants have sought to admit six Documents ("the Documents"). Generally speaking, the Documents are Congressional Resolutions or publications from the Executive Branch (United States Trade Representative, Department of Homeland Security, State Department) that also describe various aspects of the violent crisis in Cameroon. This Court should decline to take judicial notice of them for many of the reasons this Court must decline to take notice of many Requested Facts above.

---

[3] R. Maxwell Bone, "Cameroon's Forgotten Civil War is Getting Worse," Foreign Policy, December 2, 2021, *available at* https://foreignpolicy.com/2021/12/02/cameroon-civil-war-worse-nigeria-ambazonia-anglophone-crisis/ (last accessed June 23, 2023).

"Rule 201 governs only the judicial notice of 'adjudicative facts.'" *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201(a)). The notes to Rule 201 distinguish "between 'adjudicative facts' and 'legislative facts." *Id.* "Adjudicative facts are "'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, [and] their businesses.'" *United States v. Lopez*, 880 F.3d 974, 982 (8th Cir. 2018) (quoting *Qualley*, 212 F.3d at 1128). "Legislative facts, on the other hand, 'are established truths, facts or pronouncements that do not change from case to case but apply universally.'" *Id. (quoting United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976)). "A court generally relies upon legislative facts when it purports to develop a particular law or policy and thus considers material wholly unrelated to the activities of the parties." *Gould*, 536 F.2d at 220.

Here, the Documents do not contain adjudicative facts—that is, Defendants are not seeking admission of them to define the who, what, when, where, when, how, and with what intent did the Defendants act within the United States to provide material support to commit the enumerated offenses. Defendants do not provide a justification for why they believe all Documents are relevant. The Government does not even know which fact(s) from the 400-some-odd pages of Documents are the "facts" which Defendants want to be noticed. *See Lopez*, 880 F.3d at 982 (observing that it was proper for the Court to take "judicial notice of a legislative fact—that Sioux City lies within the geographic bounds of the Northern District of Iowa").

The Documents are legislative documents containing legislative facts not governed by Rule 201. Like many of the Requested Facts, the Documents "are irrelevant to the resolution of a case." *Cravens*, 610 F.3d at 1029. This Court does not need legislative documents "to develop a particular law or policy and thus consider material wholly unrelated to the activities of the parties." *Gould*, 536 F.2d at 220. Rather, as the United States already observed, "[t]he Court need not

10

determine anything regarding the nature of the rebellion in Cameroon, other than the agreed-upon fact that it is not an international armed conflict[.]" Doc. 130; Doc. 116. "The Court's task before it is simply to interpret and apply a well-worn criminal statute and possible available defenses to the facts at issue." Doc. 130. This Court observed as much in denying Chenyi's Motion to Dismiss and it should again deny the opportunity to take judicial notice of documents that are irrelevant to the resolution of the criminal charges. Doc. 126 at 10 ("… the Court finds that defendant Chenyi's argument that this Court is without jurisdiction to make a political issue determination regarding the nature of the rebellion in Cameroon to be irrelevant since the Court need not make any such determination in ruling on the legal sufficiency of the allegations in the Indictment.").

Finally, if Defendants are trying to introduce the Documents to show their actions were justified, or to support their Theory of Defense that they did not support "terrorists," it is an improper basis for admission. Those defenses are unavailable as a matter of law. While fact of the violent crisis is relevant to describe the *res gestae* of the Defendants' material support to separatists to commit the specified enumerated offenses, Defendants cannot legally defend the case by showing they were lawful combatants in an international armed conflict, or by contending they were not supporting "terrorists." *See* Doc. 126. In other words, while the existence of the conflict is relevant, the propriety of or moral justifications made by the various parties within it is not. Defendants are being prosecuted for violating Congressionally authorized statutes precluding individuals within the United States from providing material support to use weapons of mass destruction and to murder, and kidnap others abroad. Defendants' belief in the righteousness of their cause is neither relevant nor a legal defense.

## B. *This Court Must Deny Defendants' an Instruction on their Proposed Theory of Defense.*

### i. *Theory of Defense Standard*

The Eighth Circuit Pattern Jury Instructions permit a theory of defense instruction to be "drafted in accord with the particular issues of the case." 8th Cir. Model Jury Instructions § 9.05. "A criminal defendant is entitled to have the jury instructed on a defense theory if a timely submission is made of an instruction that correctly states the law and is supported by the evidence." 8th Cir. Model Jury Instructions § 9.05, cmt. (citations omitted). While this Court should give "a properly requested instruction that is supported by the evidence, contains a correct statement of law, and is not otherwise adequately covered in the instructions," this Court must refuse an instruction that "does not contain a proper statement of the law." *Id.*

### ii. *Defendants' Theory of Defense Must Be Denied Because It Does Not Contain a Proper Statement of Law—and this Court Has Already Said So.*

Defendants contend they are entitled to a Theory of Defense that "negates *the element* of specific intent to aid a terrorist organization or activity, an element in each Circuit with a model instruction for 18 U.S.C. 2339A." Doc. 142 at 6. Thus, as Defendant's own Motion admits, to grant Defendants' request, this Court would need to conclude that as a matter of law, a section 2339A charge contains "*the element* of specific intent to aid a terrorist organization or activity." *See* Doc. 142 at 6.

This Court has already addressed this issue in this litigation. The Court denied Chenyi's Motion to Dismiss rejecting this *exact same argument*, finding that dismissal was not warranted because "[t]here is no language in section 2339A(a) that would require the government to prove that the material support or resources went to or were intended for a group designated as a terrorist organization." Doc. 142 at 9.

12

> With respect to defendant Chenyi's argument that Counts One and Two should be dismissed because this case does not involve terrorism, the Court finds that the statute under which the defendants are charged in Counts One and Two, 18 U.S.C. § 2339A(a), does not require a "a connection between defendants and [a foreign terrorist organization]." *See Hodzic*, 2016 WL 11578530, at *10. In *United States v. Omar*, 786 F.3d 1104 (8th Cir. 2015), the Court discussed the difference in charges brought pursuant to 18 U.S.C. § 2339A(a) and § 2339B(a)(1). For a charge under section 2339A(a), **Providing material support to terrorists**, the government must establish that a defendant "provided material support or resources 'knowing or intending' that this support would be used in preparation for or in carrying out a conspiracy to murder or maim persons in a foreign country."[4] Id. at 1112. There is no language in section 2339A(a) that would require the government to prove that the material support or resources went to or were intended for a group designated as a terrorist organization. However, such language does appear in section 2339B(a)(1), **Providing material support or resources to designated foreign terrorist organizations**, [] a statute the defendants in the instant case are not charged with violating. Given that section 2339A(a) focuses on the offense of providing support for specific enumerated crimes (in this case—conspiring to kill, kidnap, or maim persons in a foreign country and using a weapon of mass destruction outside of the United States), rather than the offense of providing support to persons designated as terrorists, the Court finds that defendant Chenyi's argument that this Court is without jurisdiction to make a political issue determination regarding the nature of the rebellion in Cameroon to be irrelevant since the Court need not make any such determination in ruling on the legal sufficiency of the allegations in the Indictment.

Doc. 142 at 9-10 (emphasis in original) (footnote omitted).

Thus, because there is no "element of specific intent to aid a terrorist organization or activity," this Court must reject Defendants new proposed Theory of Defense. Not only is this the correct holding based on legal arguments presented in the Government's prior briefing,[4] the law of the case doctrine also commands this Court to again observe that section 2339A does not have the element Defendants repeatedly contend it does and deny Defendants' request for a defense instruction that is not supported as a matter of law. *See UniGroup, Inc. v. Winokur*, 45 F.3d 1208,

---

[4] As noted earlier, the Government incorporates by reference its prior briefing on this very issue in its Suggestions in Opposition to Defendant Francis Chenyi, Sr.'s Motion to Dismiss, Doc. 116, and its Response to Defendant Francis Chenyi, Sr's Objections to the Report and Recommendation Denying his Motion to Dismiss, Doc. 130. The Government does not feel the need to reproduce that briefing in its entirety here, but those arguments establish why Defendants' requested instruction must be denied.

13

1211 (8th Cir. 1995) ("The doctrine of the law of the case . . . is a doctrine of discretion and provides that when a court decides a rule of law, that decision should govern the same issues in subsequent stages in the same case.). Defendants were not charged under section 2339B which *does* require the Government to prove the aid was for a terrorist organization. Defendants were charged under section 2339A, which requires only the provision of material support to violate certain enumerated statutes, not to be made with an intent to further "terrorists."

As Chenyi attempted in his unsuccessful Objections to the R & R, Defendants again cite to the comments from the Seventh Circuit Pattern Instructions to section 2339A in their attempt to add elements to that statute which do not exist. *Compare* Doc. 129 at 3 *with* Doc. 142 at 5. In his Objections, Chenyi contended that the Indictment needed to contain, and the United States must prove, that the acts he supported are "terrorism" or the people supported are "terrorists" because the Seventh's Circuit Committee Comments describe the mental state required by 2339A as one in which he "possessed the specific intent that the material support or resources provided would be used to further unlawful terrorist activity." Doc. 129 at 3 (citing Seventh Circuit Model Jury Instructions (Criminal), Pattern Crim. Jury Instr. 7th Cir., at p. 972-74 (2023 Ed.)) The Government responded to those Objections and explained how the "the Seventh Circuit Pattern Instructions and its Committee Comments, [] foreclose, rather than embolden, [Defendants'] point." Doc.130 at 2. The Seventh Circuit Model Instructions "mention the word 'terrorism' only in reciting the title of the statute—they do not require the jury to find anything except the elements listed in the statute: that the defendant provided material support, and that he did so knowing or intending that that support be used to prepare for or carry out a violation of an enumerated statute." Doc. 130 at 2-4 (citation omitted). The Government also explained that "[o]ther circuits take the same approach" and that "the Model Jury Instructions for § 2339A from the United States Court

14

of Appeals for the Fifth Circuit do not use the words 'terrorism' or ' terrorist' anywhere in the body of the instruction, instruct the jurors to focus on the violations of the enumerated offenses, and only employ the word 'terrorists' in the title of the instruction, which mirrors § 2339A. Doc. 130 at 4 (citing Pattern Crim. Jury Instr. 5th Cir. 2.92A (2019)). The Court then adopted in full the R & R. Doc. 133.

Finally, while the Government has not, and need not, declare or prove that Defendants or the armed separatists to whom they provided material support are "terrorists" or committed "terrorist acts", there can be no genuine dispute that the enumerated statutes prohibiting using weapons of mass destruction, bombing, murdering, and kidnapping that Defendants' materially supported are "terrorist acts." An "act" is just "[s]omething done or performed" and a "terrorist" is "[s]omeone who uses violence such as bombing, shooting, or kidnapping in an attempt to intimidate or cause panic, esp. as a means of achieving a political end[.]" ACT, TERRORIST, Black's Law Dictionary (12th ed. 2024). Here, Defendants statements and the lawful combatant immunity defense they have sought throughout this litigation make clear they likely would admit to performing their acts for political ends and the Indictment outlines that those acts were providing support for bombing, murdering, and kidnapping. Defendants cannot use as a sword the Government's decision to date to not call them or the separatists "terrorists" when the statutes under which they are charged do not require it.

### III. CONCLUSION

WHEREFORE, the United States respectfully asks this Honorable Court to deny the Defendants Motion for Judicial Notice and to Admit Evidence, in part, and deny Defendants' Proposed Theory of Defense.

FURTHER the United States respectfully requests this Honorable Court issue an Order denying the Defendants the ability to obtain a jury instruction on their proposed theory of defense.

        Respectfully submitted,

        Jeffrey P. Ray
        Acting United States Attorney

By:   */s/ Sean T. Foley*
        Sean T. Foley
        Assistant United States Attorney

        */s/ Joseph M. Marquez*
        Joseph M. Marquez
        Assistant United States Attorney

        */s/ Dmitriy Slavin*
        Trial Attorney

        Charles Evans Whittaker Courthouse
        400 East Ninth Street, Suite 5510
        Kansas City, Missouri 64106
        Telephone: (816) 426-3122

**CERTIFICATE OF SERVICE**

      The undersigned hereby certify that a copy of the foregoing was delivered on March 7, 2025, to the CM-ECF of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

      */s/ Joseph M. Marquez*
Joseph M. Marquez
Assistant United States Attorney

*/s/ Sean T. Foley*
Sean T. Foley
Assistant United States Attorney

*/s/ Dmitriy Slavin*
Trial Attorney