IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAUDE CHI, ET AL.,<br><br>Defendant. | Case No. 22-00261-01/03-CR-W-RK |

**THE UNITED STATES OF AMERICA'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' JOINT SECOND MOTION FOR JUDICIAL NOTICE, ADVANCED MOTION IN LIMINE TO ADMIT EVIDENCE, AND PROPOSED THEORY OF DEFENSE FOR TRIAL**

The United States of America, through Assistant United States Attorneys, Sean T. Foley and Joseph M. Marquez, and National Security Division Trial Attorney, Dmitriy Slavin, files these Suggestions in Opposition to Defendants Claude Chi, Francis Chenyi, Sr., and Lah Langmi's (collectively "Defendants") Joint Second Motion for Judicial Notice, Advanced Motion in Limine to Admit Evidence, and Proposed Theory of Defense at Trial ("Second Motion").

### I. INTRODUCTION & BACKGROUND[1]

On November 18, 2022, Defendants were indicted in multiple counts all of which relate to their actions within the United States to raise funds for, provide equipment to, and collect ransoms on behalf of separatist fighters waging an internal and ongoing violent crisis within the Anglophone region in Cameroon. *See generally* Doc. 1. Defendants are United States citizens

---

[1] The United States would refer this Court to, and incorporate herein, both the factual background and arguments made by the United States in its Suggestions in Opposition to Defendants Motion for Judicial Notice, Advanced Motion in Limine to Admit Evidence, and Proposed Theory of Defense, Doc. 142, the United States' Suggestions in Opposition to Defendant Claude Chi's Motion for Reconsideration of Detention Order, Doc. 61, the United States' Response in Opposition to Defendant Francis Chenyi, Sr.'s Motion to Dismiss, Doc. 116, and the United States' Response to Defendant Francis Chenyi, Sr.'s Objections to the Report and Recommendation Denying his Motion to Dismiss, Doc. 130.

residing in the United States. Doc. 1. During the time period involved in the Indictment, Chi resided in Lee's Summit, Missouri, Chenyi resided in St Paul, Minnesota, and Langmi resided in Buffalo, New York. Doc. 1.

Defendants are alleged to have solicited and raised funds for equipment, supplies, weapons, and explosive materials to be used in attacks against Cameroonian government personnel, security forces, and property, and in kidnapping civilians believed to be enabling the Cameroonian government or insufficiently supporting the separatists. These funds were raised through online chat applications and payment platforms from individuals located in the United States and abroad. The funds were then transferred from various financial and cryptocurrency accounts controlled by Defendants through intermediaries to the separatist fighters to support attacks in Cameroon.

The Indictment alleges in Count One that Defendants illegally conspired while within the United States to provide material support and resources to others to aid in carrying out a conspiracy to kill, kidnap, or maim persons in a foreign country, in violation of 18 U.S.C. § 956(a), and conspire to use a weapon of mass destruction outside of the United States, in violation of 18 U.S.C. § 2332(a). In Count Two, the Indictment alleges that Defendants attempted to provide and did provide material support and resources while within the United States to others intending that they be used to prepare for and carry out a conspiracy to use a weapon of mass destruction outside of the United States in violation of 18 U.S.C. § 2332(a). *See* Doc. 1. Count Three alleges that Defendants received money for a ransom demand for the release of a person who had been kidnapped. Doc. 1. Finally, Count Four alleges a money laundering conspiracy to promote the carrying out of specified unlawful activities, namely conspiring to use a weapons of mass destruction abroad and conspiring to kill, kidnap, or maim persons in a foreign country

On January 13, 2025, Defendants filed their first Joint Motion for Judicial Notice, Advanced Motion in Limine to Admit Evidence, and Proposed Theory of Defense, Doc. 142 ("First Motion"). The United States responded highlighting why their proposed theory of defense—essentially, arguing that Counts One and Two required proof the material support was to "terrorists" and the United States had not alleged anyone was a "terrorist"—was improper as a matter of law and why their evidence in support of that theory was similarly disputed. Doc. 146. This Court agreed and denied Defendants' First Motion.[2]

This Second Motion is structured much the same as the First Motion, just requests acceptance of different facts the Government still disputes and different inapplicable defenses. It first requests the Court take judicial notice of alleged "facts" ("Requested Facts") and documents attached as Exhibits ("Documents") and admit the Requested Facts and Documents at trial to be read to the jury. *See* Doc. 142 at 1-5; Doc. 142-1 through 142-6. The Requested Facts and Documents, generally speaking, detail and discuss the history of, and atrocities committed by, the parties to the ongoing, internal violent crisis in Cameroon. Just like in their First Motion, a portion of one of the Requested Facts is relevant, but the rest are irrelevant. Just like in their First Motion, Defendants again cherry-pick portions of the Documents favorable to them while skipping over portions unfavorable. And just like in their First Motion, they selectively pull from these Documents to undergird defenses—the lawful combatant immunity defense, self-defense, defense of others, and their purported Theory of Defense—which are unavailable as a matter of law.

---

[2] Defendants contended they were entitled to a Theory of Defense that "negates *the element* of specific intent to aid a terrorist organization or activity, an *element* in each Circuit with a model instruction for 18 U.S.C. 2339A." Doc. 142 at 6 (emphasis added). However, this Court—correctly and at the Government's urging—already had denied Chenyi's Motion to Dismiss that attempted this *exact same argument*. *See* 126 at 9; Doc. 133. Thus, this Court's denial of the First Motion was the second time that argument had effectively been denied.

Setting aside the fact that the Documents and Requested Facts are by and large irrelevant, reading only the favorable portions makes the inferences they seek disputed, incomplete, and prejudicial.

Thus, the United States requests that the Court deny the Defendants' Proposed Theories of Defense. The United States also requests this Court rule *in limine* that Defendants are precluded from asserting and obtaining instructions for the lawful combatant immunity defense, self-defense, defense of others, and coercion/duress. *See United States v. Davidson*, 108 F.4th 706, 710 (8th Cir. 2024) ("We have consistently permitted pre-trial determinations as to whether a particular defense is available.").

## II.     ARGUMENT & AUTHORITIES

### A. *This Court Should Deny Defendants' Motion for Judicial Notice and Advanced Motion in Limine to Admit Evidence.*

#### i.     Requested Facts for Judicial Notice

Under Federal Rule of Evidence 201(b), a court may take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017). For instance, a judicially noticed fact "could include, for example, 'well-established scientific theories and principles'" like the undisputable fact that radium is a solid element that emits alpha particles. *See Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 704 (E.D. Mo. 2018) (quoting *Williams*, 845 F.3d at 904).

However, "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009) (*quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). This Court must exercise the utmost

4

"[c]aution . . . to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules." *Am. Prairie Const. Co.*, 560 F.3d at 797.

Some "facts" cannot be judicially noticed. *See e.g., Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir. 2010). Facts cannot be judicially noticed if they "are irrelevant to the resolution of [the] case." *Id.*; *see also United States v. Peck*, 161 F.3d 1171, 1174 (8th Cir.1998) ("The court also correctly declined to take judicial notice of other irrelevant materials."). Indeed, the Hon. D. Gregory Kays observed that "the Eighth Circuit has repeatedly made clear that the Court should not take judicial notice of irrelevant materials or facts." *Rightchoice Managed Care*, *Inc. v. Hosp. Partners, Inc.,* No. 5:18-CV-06037-DGK, 2021 WL 4258753, at *1 (W.D. Mo. Sept. 17, 2021). Even if a fact is relevant, it should not be judicially noticed if it fails the Rule 403 balancing test— that is, if it is "unfairly prejudicial." *Id.* at *2; *see also Am. Prairie Const. Co.*, 560 F.3d at 797.

Judicial notice also is not appropriate when the facts or documents are "offered for the truth of the matters within them and inferences to be drawn from them and the opposing party disputes those matters." *N. Oil & Gas, Inc. v. EOG Res., Inc.*, 970 F.3d 889, 895 n.6 (8th Cir. 2020). The dispute can center on either the "facts" themselves or the "inferences that the [party] attempt[s] to establish through the documents." *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 832 (8th Cir. 2003).

Nearly all of Defendant's Requested Facts are irrelevant for one of two reasons. First, most have nothing to do with the resolution of the criminal violations at issue; they are irrelevant on their face. Second, others are geared to support defenses that are unavailable as a matter of law; because the defenses are unavailable, the "facts" to support them are irrelevant. This Court observed this in denying the First Motion's request when it observed that if "proffered facts and

5

documents as relevant to the Theory of Defense necessarily falls by the wayside." *See* Doc. 153 at 3-4.

In addition to being irrelevant, they are misleading and therefore prejudicial. The Requested Facts do not ask the Court to read to the jury portions of the source not favorable to the separatists' cause, just those placing the moral justifications of separatists' cause—which is irrelevant to the resolution of the charges anyway—in an auspicious light. Thus, the United States objects to the inferences and believes reading some portions of a largely irrelevant secondary source, while omitting others, fails a Rule 403 balancing test. Below, the United States will respond to each of the Requested Facts as well.

> *1.     The proffered evidence will establish that in October of 2016, peaceful protesters in the English-speaking regions of Cameroon were violently repressed by government security agents (State agents) using unlawful deadly force on unarmed civilians exercising their protected speech and rights. (See Docs. 142-2 at p. 3; Doc 142-3 at p. 1.).*

Government's Response: While the United States agrees that the fact of the violent crisis and its origins in the English-speaking region of Cameroon are relevant, the United States believes that reading a single paragraph without more context is unfairly prejudicial and incomplete. Moreover, legal conclusions in this document (such as the claim that the use of force was unlawful) are not facts that can be judicially noticed.

> *2.     Evidence will establish that Cameroon state agents extended their unlawful use of force from the protest grounds into residential areas where more outrageous attacks, like extrajudicial killings, torture, arbitrary arrest and detention, rape, burning and looting of homes, property destructions and demolitions, were intentionally carried out. It should be noted that the actions of the Cameroon State agents failed to distinguish between those taking part in hostilities and innocent civilians that did nothing and yet were attacked within their homes and communities. The volume of brutalization and violent deadly force was endemic and demanded an immediate response. See, Exhibit 1, United States Department of State, Country Report on Cameroon from 2018, at p. 2 ("In July, Human Rights*

> *Watch (HRW) reported that during government operations in 12 villages in ..., government security forces shot and killed more than a dozen civilians, including at least seven persons with intellectual or developmental disabilities who had difficulty fleeing."); See also ("HRW reported that ... security forces set houses on fire, burning to death at least four elderly women left behind by their relatives at the time of the attack.") Id. at p. 15*

Government's Response: While the United States is sympathetic to populations affected by this violent crisis, this fact is irrelevant to this litigation. This is a hearsay statement as well. Moreover, the United States objects to the inference sought from this "fact." In short, Defendants continue to cite piecemeal selective portions which fail to provide an accurate picture of the violent crisis. The same document provides the that the "[h]uman rights issues included arbitrary and unlawful killings by security forces as well as armed Anglophone separatists; forced disappearances by security forces, Boko Haram, and separatists; torture by security forces and Anglophone separatists[.]" Doc. 155-1 at 23. Moreover, the United States Department of State's 2023 Country Report on Human Rights Practices: Cameroon provides

> There were reports government forces and separatist fighters deliberately killed numerous civilians. Although independent observers accused government forces of killing unarmed civilians, officials claimed those killed by government forces in conflict zones were in fact separatists. Separatists also attacked and killed government workers and civilians alleged to have assisted government forces or who did not observe separatist-imposed lockdowns.
>
> . . .
>
> On February 10, armed separatists killed five workers of the Cameroon Development Corporation because they worked during a separatist-imposed lockdown ahead of a February 11 government holiday celebration. The Ambazonia Governing Council, an armed separatist group, claimed responsibility for the attack. On February 20 in Bali, Northwest Region, suspected separatists beheaded a teenager whom they accused of revealing separatist hideouts. In one of the largest attacks since the conflict began, on November 6, suspected members of a nonstate armed group entered Egbekaw Village in Manyu Division of the Southwest Region, shot randomly, and set ablaze several houses. In a November 7 statement, the government indicated the preliminary death toll from the attack was 25 persons. The government attributed the attack to a separatist group known as the Manyu

Unity Warriors, affiliated with the Ambazonian Defense Forces. Subsequent estimates put the death toll between 40 and 60, making it the single deadliest attack of the seven-year conflict.

. . .

**Abductions:** Armed separatists reportedly abducted several individuals for not respecting separatist-imposed lockdown measures. Separatists held civilians as hostages, including public officials, political leaders, teachers, schoolchildren, and religious and traditional leaders. There were reports abductors physically abused their victims.[3]

The United States does not cite these facts in order to request the Court notice them or read them to the jury. Rather, the United States cites this portion to show why Defendants' proposed facts are incomplete, prejudicial, and cannot be judicially noticed.

Finally, Defendants appear to seek notice of this Requested Fact to infer that, because the government of Cameroon has committed human rights abuses, the Defendants' actions within the United States to provide material support to commit certain enumerated offenses is somehow in defense of others or justified. *See infra sections III.B.ii-v*. These are improper defenses, which makes this fact irrelevant. And the inference they seek too is incomplete and disputed because it seeks "notice of human rights violations and abuses" committed "by the government of Cameroon," but does not seek notice of alleged atrocities committed by their group.

> *3.     Evidence will demonstrate that in the face of such sudden brutal attacks on the entire region, the people rising as one, in their land and against their government, grabbed arms to defend themselves against unlawful invasion and a tyrannical government. In the midst of these severe violent political disturbances, the people declared their independence in October 2017, and since then, have stood their ground to defend their people and territory*

Government's Response: See Government's Response to Proposed Fact Number Two.

---

[3] United States Department of State, *2023 Country Report on Human Rights Practices: Cameroon*, *available at* https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/cameroon/.

> *4. Evidence will further demonstrate that the outrageous conduct of Cameroon state agents was not accidental, but a well calculated and politically motivated strategy, to coerce a minority population into subjugation. The actions were systematic and widespread throughout the Anglophone region. The entire region witnessed the same modus operandi: extrajudicial executions, torture and beating to death, setting of homes and villages on fire with residents inside, rape and sexual abuse incidents reported territory wide, arbitrary arrest and detention incommunicado. See, Exhibit 2, United States Department of State, Country Report on Cameroon from 2019 ("January 29, security forces shot and killed a nurse ... burned alive 13 civilians including seven business persons who were returning from a business trip to neighboring Nigeria."). See also, Exhibit 3, 2020 Report ("On or around April 22, ... government security forces executed six unarmed men ... victims included four former separatist fighters who had accepted an amnesty offer in 2019.").*

Government's Response: See Government's Response to Proposed Fact Number Two.

> *5. Evidence will also expose the struggle from the separatist and political activist front, mirroring how freedom fighting groups emerged after continuous violent assaults from the Cameroon regime authorities. The need for self-defense and the defense of others was primordial leading to the creation of a de facto government also known as the Interim Government (IG) for the people of Southern Cameroons/Ambazonia by the end of 2017. The Ambazonia IG, in an effort to reorganize the activities on the ground and coordinate the rights to collective self-defense of the freedom fighters, created the Ambazonia Restoration Force (ARF) to be the de facto state military. Freedom fighters were invited to volunteer and fight under the ARF. Those who accepted the invitation were expected to function according to the rules of engagement and code of conduct as defined by the IG. The ARF are an organized revolutionary army engaged in an armed conflict for self-determination and is commanded by a person responsible for their subordinates, have a fixed distinctive sign recognizable, carry arms openly and are engaged in open combat in their self determination quest. As freedom fighters, ARF have the right to participate in hostilities as codified in Protocol I article 43 and 44 and operate under the Laws of Armed Conflict (LOAC). Defendants, acting as representatives of the IG, were directly involved with the day-to-day decisions of the ARF.*

Government's Response: This "fact" is uncited. This "fact" is hearsay. While the Defendants' involvement in the Ambazonian Restoration Forces ("ARF") and the ARF's history

and military activities are relevant, the United States disputes that the ARF "is the military wing of the de facto government of Southern Cameroons." According to a 2021 article from Foreign Policy, "The Ambazonia Governing Council is only one of several groups that comprise the bitterly divided secessionist movement in Cameroon."[4] This "fact" moreover appears an attempted backdoor into arguing the lawful combatant immunity defense that this Court has rejected. It attempts to falsely paint the crisis as a conflict between two opposing militaries. As the evidence in this case will show at trial, the ARF is far from an organized military and there is no dispute this crisis is non-international.

## ii.     Documents for Judicial Notice

Defendants have sought to admit three Documents ("the Documents"). Generally speaking, the Documents are three United States Department of State country reports on Cameroon that describe various aspects of the violent crisis in Cameroon. This Court should decline to take judicial notice of them for many of the reasons this Court must decline to take notice of many Requested Facts above.

"Rule 201 governs only the judicial notice of 'adjudicative facts.'" *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201(a)). The notes to Rule 201 distinguish "between 'adjudicative facts' and 'legislative facts." *Id.* "Adjudicative facts are "'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, [and] their businesses.'" *United States v. Lopez*, 880 F.3d 974, 982 (8th Cir. 2018) (quoting *Qualley*, 212 F.3d at 1128). "Legislative facts, on the other hand, 'are established truths, facts or pronouncements that do not change from case to case but apply universally.'" *Id. (quoting*

---

[4] R. Maxwell Bone, "Cameroon's Forgotten Civil War is Getting Worse," Foreign Policy, December 2, 2021, *available at* https://foreignpolicy.com/2021/12/02/cameroon-civil-war-worse-nigeria-ambazonia-anglophone-crisis/ (last accessed June 23, 2023).

10

*United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976)). "A court generally relies upon legislative facts when it purports to develop a particular law or policy and thus considers material wholly unrelated to the activities of the parties." *Gould*, 536 F.2d at 220.

Here, the Documents do not contain adjudicative facts—that is, Defendants are not seeking admission of them to define the who, what, when, where, when, how, and with what intent did the Defendants act within the United States to provide material support to commit the enumerated offenses. Defendants do not provide a justification for why they believe all Documents are relevant. The Government does not even know which fact(s) from the 400-some-odd pages of Documents are the "facts" which Defendants want to be noticed. *See Lopez*, 880 F.3d at 982 (observing that it was proper for the Court to take "judicial notice of a legislative fact—that Sioux City lies within the geographic bounds of the Northern District of Iowa").

The Documents are legislative documents containing legislative facts not governed by Rule 201. Like many of the Requested Facts, the Documents "are irrelevant to the resolution of a case." *Cravens*, 610 F.3d at 1029. This Court does not need legislative documents "to develop a particular law or policy and thus consider material wholly unrelated to the activities of the parties." *Gould*, 536 F.2d at 220. Rather, as the United States already observed, "[t]he Court need not determine anything regarding the nature of the rebellion in Cameroon, other than the agreed-upon fact that it is not an international armed conflict[.]" Doc. 130; Doc. 116. "The Court's task before it is simply to interpret and apply a well-worn criminal statute and possible available defenses to the facts at issue." Doc. 130. This Court observed as much in denying Chenyi's Motion to Dismiss and it should again deny the opportunity to take judicial notice of documents that are irrelevant to the resolution of the criminal charges. Doc. 126 at 10 ("… the Court finds that defendant Chenyi's argument that this Court is without jurisdiction to make a political issue determination regarding

11

the nature of the rebellion in Cameroon to be irrelevant since the Court need not make any such determination in ruling on the legal sufficiency of the allegations in the Indictment.").

Finally, while the existence of the violent crisis is relevant, the propriety of, or moral justifications made by, the various parties within it is not. Defendants are being prosecuted for violating Congressionally authorized statutes while living in the United States. These statutes preclude individuals within the United States from providing material support to use weapons of mass destruction and to murder and kidnap others abroad. Defendants' belief in the righteousness of their cause is neither relevant nor a legal defense.

> **B.** ***This Court Must Deny Defendants' an Instruction on the Lawful Combatant Immunity Defense, Self-Defense, Defense of Others, and Coercion/Duress.***

> > *i.     Defense Instructions*

The Eighth Circuit Pattern Jury Instructions permit a theory of defense instruction to be "drafted in accord with the particular issues of the case." 8th Cir. Model Jury Instructions § 9.05. "A criminal defendant is entitled to have the jury instructed on a defense theory if a timely submission is made of an instruction that correctly states the law and is supported by the evidence." 8th Cir. Model Jury Instructions § 9.05, cmt. (citations omitted). While this Court should give "a properly requested instruction that is supported by the evidence, contains a correct statement of law, and is not otherwise adequately covered in the instructions," this Court must refuse an instruction that "does not contain a proper statement of the law." *Id.*

"To be entitled to a jury instruction on a justification defense, a defendant must show an underlying evidentiary foundation as to each element of the defense, such that a reasonable person could conclude that the evidence supported the defendant's position." *United States v. Farah*, 899 F.3d 608, 615 (8th Cir. 2018) (quoting *United States v. Poe*, 442 F.3d 1101, 1104 (8th Cir. 2006)).

12

"Whether there is sufficient evidence to support the submission of an instruction on an affirmative defense is a question of law which we review de novo." *Id.* (quoting *Poe*, 442 F.3d at 1103). Finally, this Court's pretrial determination of the availability of defenses is permitted to narrow the issues for trial. *Davidson*, 108 F.4th at 710.

> ii. *The Lawful Combatant Immunity Defense Does Not Apply.*

Twice already—in Chi's Motion for Reconsideration of Order of Detention, Doc. 83, and Chenyi's Motion to Dismiss, Doc. 108 at 6—Defendants have raised the prospect of asserting the so-called "lawful combatant immunity defense." In response to both of those assertions, the United States has shown why Defendants are not entitled to the lawful combatant immunity defense. *See* Docs. 93, 116.

Not only has the United States shown why that defense is unavailable as a matter of law, this Court too has held or intimated that Defendants are unlikely to be permitted to avail themselves of the lawful combatant immunity defense. *See* Doc. 101 at 5; Doc. 126 at 11. For instance, this Court stated that it did not "find persuasive [Chenyi's co-defendant's] assertion of the lawful combatant immunity defense for purposes of considering the weight of the evidence against him as to the matter of pre-trial detention under § 3142(g)." Doc. 101 at 5. Next, this Court went further and held that "the combatants in the case before this Court were fighting in a non-international armed conflict, the lawful combatant immunity defense does not provide a basis for dismissal of Counts One and Two of the Indictment." Doc. 126 at 11. In response to Defendants' First Motion, this Court noted that while Defendants could seek this defense at a later point, "Judge Counts rejected Defendant Chenyi's argument that the lawful combatant immunity defense provided any grounds to dismiss Counts 1 and 2" and this Court adopted that report and recommendation. Doc. 153 at 2-3 n.3

The United States hereby adopts its arguments set forth in its Response in Opposition to Chi's Motion for Reconsideration of Order of Detention, Doc. 93. These arguments make clear that lawful combatant immunity is an affirmative defense that is only applicable to international armed conflict. *See e.g. United States v. Harcevic*, 999 F.3d 1172 (8th Cir. 2021); *United States v. Hamidullin*, 888 F.3d 62, 66 (4th Cir. 2018). The crisis in Cameroon is a non-international conflict between government forces and various militia groups, including the Defendants' ARF. Doc 93. Defendants own filing notes the violent crisis is a non-international war. *See* Doc. 155 at 4 n.1 (seeking protection for being "engaged in internal or domestic struggle[s]" over the composition of government and observing the "conduct of ARF was incidental to and in furtherance of a political uprising" and stemming from an "internal crisis"). Thus, because Defendants provided material support to individuals engaged in a non-international armed conflict, the lawful combatant immunity defense is unavailable.

### iii. *Defendants are not entitled to a self-defense instruction.*

Typically, such as with the lawful combatant immunity defense, defense of others, or coercion, "the common law [has] long required a defendant to bear the burden of proving ... by a preponderance of the evidence." *Davidson*, 108 F.4th at 710 (citation and quotation marks omitted). But "[s]elf-defense is different." *Id.* "Although a federal defendant bears the burden of production on the issue of self-defense, once that burden is met, the government must prove beyond a reasonable doubt that the defendant did not act in self-defense." *Id.* (quoting *United States v. Farlee*, 757 F.3d 810, 815 (8th Cir. 2014)). Courts should give a self-defense instruction if the defendant produces evidence "upon which the jury could rationally sustain the defense." *Id.* Whether a defendant can produce that evidence can be resolved in pre-trial litigation, with the defendant being required to provide evidence to support the requested

14

instruction. *See id.* And, if the evidence produced in support, even viewed in the light most favorable to him, is insufficient to meet the burden of production, the defense instruction must be denied. *Id.*

Here, Defendants' Second Motion fails to produce *any* evidence to support the imminency requirement needed to obtain a self-defense instruction. *See id.* To obtain a self-defense instruction, Defendants here would need to produce evidence to show "that [Defendants] used such force that [they] reasonably believed was necessary *to protect [themselves]* from unlawful physical harm *about to be inflicted upon [them]* by another." *Id.* (quoting *Hall v. United States*, 46 F.3d 855, 857 (8th Cir. 1995) (emphasis added). That harm about to be inflicted upon the Defendants *here* needs to be "imminent." *Id.* (quoting *United States v. Farlee*, 757 F3d. 810, 818 (8th Cir. 2014)).

Put simply, Defendants have made absolutely no showing that they were in any danger from anyone in Cameroon as they went about their business in Kansas City, Minneapolis, and Buffalo. While Defendants have produced reports about the dangers people *in Cameroon* face from the violent crisis, they have produced nothing to show *they* were in danger. That is their burden; they needed to, and have not, shown that shipping IED components in likely months-long journeys to Cameroon or sending money to purchase IEDs and buy firearms and assist in kidnappings on a different continent was somehow coming from their "reasonable belief that danger was 'about to be inflicted upon [them]'" here in the United States as United States citizens. *Id.* (quoting *Hall,* 46 F.3d at 857). They were under no danger, much less imminent danger, and self-defense is unavailable here.

      *iv.*   *Defendants are not entitled to a defense of others instruction.*

15

Defendants also claim they were acting in defense of others. In similar fashion as self-defense, "one is not justified in using force to protect the other unless he reasonably believes that the other is in immediate danger of unlawful bodily harm and that force is necessary to prevent that harm[.]." *United States v. Oakie*, 709 F.2d 506, 506–07 (8th Cir. 1983) (quoting W. LaFave & A. Scott, Handbook on Criminal Law § 54, at 398 (1972)).

Here, Defendants' filing does not identify any imminent danger to any specific person that justifies their actions. Instead, they claim the danger was to all citizens of the Northwest and Southwest regions of Cameroon based on "past experience with the Cameroon ruling regime" that "has been ongoing for over half a century." Doc. 155 at 7.

The Eight Circuit rejected this same argument in a similar context already and this Court should do so again. *See United States v. Mohamed Abdihamid Farah*, 899 F.3d 608, 615 (8th Cir. 2018). In *Farah*, defendants were charged with, and ultimately convicted of, conspiracy to commit murder abroad in violation of 18 U.S.C. § 956(a) for conspiring to travel to Syria and join the Islamic State of Iraq and the Levant ("ISIL"). They sought a defense of others instruction arguing that their attempts to fight for ISIL was motivated by a desire to prevent the atrocities being committed by the Syrian regime against innocent Muslim civilians. The Eighth Circuit rejected this defense because the defendants "never discussed killing in the context of defending individual Syrian civilians who faced an immediate and specific threat." *Id*. at 615-616. "Indeed, their purported justification pertained only, in the most general terms, to the Syrian civil war and civilian suffering" which failed to satisfy the imminency standard. *See id*.

Like the defendants in *Farah,* Defendants fail to point to any immediate and specific threat any other individual faced that caused them to react with reasonable force to relieve that risk of harm. Defendants' evidence here in support of their defense of others theory is that they had a

16

general concern about the actions of the Government of Cameroon over half a century against members of a population of about six million people. Doc. 155 at 7. That is not the kind of imminent danger to specific individuals that entitles one to a defense-of-others instruction.

Even if Defendants could name specific individuals who were facing imminent danger by the Government of Cameroon, the defense would still not be applicable. A defendant "may not use more force than he reasonably believes necessary to relieve the risk of harm." *Oakie*, 709 F.2d at 507(quoting W. LaFave, *Handbook on Criminal Law* § 54). Defendants do not show how their acts were no more than necessary to relieve any specific harm. And kidnapping civilians for ransom, kidnapping community and religious leaders for political purposes, and bombing buildings does not also prevent a risk of harm.

Finally, granting Defendants' request for a defense of others for conspiring to murder and kidnap people abroad in the support of one party to non-international crisis would essentially abolish the legal limits of the lawful combatant immunity defense; limits this Court has already intimated apply to preclude Defendants from obtaining that defense. *See e.g. Harcevic*, 999 F.3d 1172. Defendants practically would be free to fund violent crises abroad and claim that, while they are not lawful combatants, their actions are nevertheless permissible to support those fighting in a non-international conflict.

> v. *Defendants are not entitled to a coercion/duress instruction.*

For similar reasons, Defendants do not have a coercion or duress defense. To be entitled to a duress or coercion instruction, Defendants must establish the following:

> (1) *he* was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; (3) that *he* had no reasonable, legal alternative to violating the law; and (4) that a direct causal

17

relationship may be reasonably anticipated between the commission of the criminal
act and the avoidance of the threatened harm.

*United States v. Diaz*, 736 F.3d 1143, 1150 (8th Cir. 2013) (cleaned up) (emphasis added).

Defendants cannot show at least the first, third, and fourth elements. First, they were under no present, imminent threat of death or serious bodily injury. Defendants are citizens of the United States and during the time at issue in the indictment living in Kansas City, Minneapolis, and Buffalo respectively. Defendants have not shown they acted out of a fear *they* were under an imminent and impending threat that put them in apprehension of death or serious bodily injury. Next, Defendants had reasonable, legal alternatives to violating the law by engaging in political advocacy and diplomacy instead of directing kidnappings and bombings. And, as explained above, their crimes bear no direct causal relationship to avoiding harm from the Government of Cameroon. Thus, Defendants have not established entitlement to this instruction either.

### III. CONCLUSION

WHEREFORE, the United States respectfully asks this Honorable Court to deny the Defendants Motion for Judicial Notice and to Admit Evidence, in part, and deny Defendants' Proposed Theory of Defense.

FURTHER the United States respectfully requests this Honorable Court issue an Order denying the Defendants the ability to obtain a jury instruction on their proposed theory of defense, self-defense, defense of others, and duress/coercion.

Respectfully submitted,

Jeffrey P. Ray
Acting United States Attorney

By: */s/ Sean T. Foley*
Sean T. Foley
Assistant United States Attorney

*/s/ Joseph M. Marquez*
Joseph M. Marquez
Assistant United States Attorney

*/s/ Dmitriy Slavin*
Trial Attorney

Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that a copy of the foregoing was delivered on July 22, 2025, to the CM-ECF of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Joseph M. Marquez*
Joseph M. Marquez
Assistant United States Attorney

*/s/ Sean T. Foley*
Sean T. Foley
Assistant United States Attorney

*/s/ Dmitriy Slavin*
Trial Attorney