IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cr-00261-RK |
| ) | |
| FRANCIS CHENYI, SR., ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR JUDICIAL NOTICE**

Defendants have instructed undersigned counsel to submit this reply in support of their Second Motion for Judicial Notice (Doc. 155), and in support of said motion, state as follows:

**1. Judicial Notice**

Defendants reiterate that their proffered evidence covers both legislative and adjudicative facts. For example, the U.S Political branch records are offered as legislative facts that speak to the truths or official pronouncements that apply to the Cameroon crisis. On the other hand, facts about the Southern Cameroons/Ambazonia, its de facto Interim Government (IG) and its political subdivisions, are adjudicative facts requiring the court to make a determination as to their truthfulness and applicability to the case before the court. (See Doc. 155 at 6) speaking as to the IG and ARF. Defendants pray the court for an evidentiary hearing to offer into evidence, testimonies and working documents like the constitution of Southern Cameroons/Ambazonia, Ngoketunjia County by-laws, ARF Rule of Engagement, and Code of Conduct. These documents are relevant to grant the Court

access to undisputed facts that are background to the Cameroon crisis.[1] The documents will provide a complete picture of the Cameroon crisis, not just the incidental acts.

**2. The Defendants' actions were legally justified as a response to the brutality of the Cameroon regime based on the defenses of coercion, necessity, and defense of another.**

---

[1] Defendants were born in this region and lived nearly all of their lives in the approximate area where the attacks are ongoing. Moreover, defendant's immediate family members remain in this area. Defendants also have significant familial and geopolitical ties to this area. Defendants assistance to their families and community was due to coercion. Such coercion was from a third-party foreign government (Cameroon authorities). See LaFave & Scott, Substantive Criminal Law section 5.3 (1986) ("it is an affirmative defense that the actor [defendant] engaged in the conduct ... because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another."); *United States v. Liu*, 960 F.2d 449, 454 (5th Cir. 1992) ("it is clear that the jury should be informed that the [coercion] defense is available if the defendant proves that he or a member of his family, was under a present, imminent, or impending threat of death or serious bodily injury."); *U.S v. Haney*, 287 F.3d 1226, 1270-73 (10th Cir. 2002) speaking as to the availability of third party duress [coercion] to a defendant who proffers evidence. Ongoing torture and other inhumane conditions including death constitute unlawful use of force under international law and treaties. See Convention Against Torture. Such circumstances should not be categorically rejected due to lack of imminence. Any horrific and continuous brutalization and deadly assaults keep the element of imminency present and constitute psychological distress (trauma) to defendants who are survivors of Cameroon regime brutal violence.

In *United States v. Davidson*, 108 F.4th 706 (8th Cir. 2024) the Eighth Circuit defined "imminent" according to the Black's Law Dictionary (11th ed. 2019) ("a harm is imminent when the danger is already occurring or threatening to occur immediately; dangerously impending.") To act under imminent threats, defendants need not pursue alternatives that are not relevant to stop the threatening harm immediately. In this case, defendants maintain a reasonable belief that deadly force was necessary in collective self-defense and defense of others as a de facto nation. See U.S. Attorney General Opinion, 2002 OLC Lexis 19 (August 1, 2002) ("We believe that a claim by an individual of the defense of another would be further supported by the fact that, in this case, the nation itself is under attack and has the right to self-defense"). Defendants acting as a de facto nation had "a well grounded fear of immediate death or serious bodily harm if the criminal act was not done" and "no reasonable opportunity to avoid performing the act without facing danger". Defendants have met the initial burden of introducing fact sufficient to trigger consideration of affirmative defenses. See *United States v. Campbell*, 609 F.2d 922, 924 (8th Cir. 1979)("sufficient to trigger consideration of the coercion defense.")

Defendants assert this proffered evidence is offered to negate their guilt of the crimes charged because coercive conditions warranted their involuntary participation as elected officials of the Ngoketunjia County under the IG. The evidence will establish that the charged conduct are "acts incidental to a primary illegality committed by the Cameroon State authorities under color of law." The Cameroon State agents created the political unrest leading to the birth of a new nation. Neither the IG nor the ARF existed before October 1, 2017. These structures were created out of coercion and a "need to survive as a people". Litigating this crisis without first examining its cause is fundamentally unfair to defendants and violates their due process. Defendants maintain that the government of Cameroon applied unlawful force on civilians that led to a political uprising, which further developed into an ongoing armed revolutionary conflict.

### 3. Political Uprising and Armed Struggle towards Self-Determination

Defendants assert that their acts are derivatives of unlawful attacks on their people. Thousands have been killed in this armed conflict. These deceased individuals are blood relatives and friends of defendants and their community. The U.S does not dispute the crisis, nor the deaths, but rather demands a list of the people in imminent danger.

Armed struggles are not ordinary activities and acts committed in a political uprising or during armed conflicts must be litigated based on the totality of the circumstances including the origins or instigating factors and nature of foray. The Fifth Amendment due process makes it clear that "no person shall be held to answer... except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger." ARF were called forth and have been engaged "in actual service" in the Cameroon rebellion.

Firstly, the political offense exception, just like the Fifth amendment. exempts acts that are "incidental to or in furtherance of" an uprising, revolutionary war, rebellion, and armed conflicts from prosecution, unless such acts violate the laws of armed conflict. The U.S has failed to address the "incidental to or in furtherance of" component of the Cameroon uprising. Defendants and their ARF invoke the political offense exception to their activities and involvement in the armed struggle. Nothing in cited material speaks about these defendants or their IG and ARF

Defendants assert the court review their political uprising and armed struggle allegations to determine whether their actions and that of ARF form "acts of a political character". The IG and its political subdivisions have a right to resort to political activism to foster their peoples' lives. See *Quinn v. Robinson*, 783 F.2d 776, 793 (9th Cir. 1986) ("... it is grounded in a belief that individuals have a right to resort to political activism to foster political change."). Defendants acting as elected officials of the IG form the political chain of command to manage and direct the people's armed struggle and their self-determination quest. Defendants actions were incidental to and form part of the revolution.

The court should also take note of the fact that defendants only got involved after the people had declared their independence. Hence, defendants had nothing to do with the political uprising between October 2016 and October 1, 2017. The IG was created in December 2017 and these defendants were not officials. In January 2018, the Government of Cameroon working with Nigerian authorities arrested the leadership of the struggle seeking refugee status in Nigeria. The people decided to hand over their de facto government to their diaspora comrades. ARF was created by the IG in 2018 and since then has been fighting as the military wing of the IG.

The actions of defendants and their military when viewed in times of peace constitute common crimes, but in times of war, such common offenses are closely allied to the manner of waging war. The realities of contemporary struggles may be rather grim. See *Matter of Maldonado-Cruz*, 19 I.& N. Dec. 509, n3 (B.I.A 1988) ("... A revolutionist needs horses for moving, beef to feed his troops, etc; and since he does not go into the public market to purchase those horses, and that beef, nor the arms... he takes them from the first pasture or shop he finds at hand. This is called robbery everywhere, and is a common offense in time of peace, but in time of war it is a circumstance closely allied to the manner of waging it.") *Id* at n3. Also see Quinn supra at 810. ("Acts as disparate as stealing food to sustain the combatants, killing to avoid disclosure of strategies, or killing simply to avoid capture, [seizure of persons with hostile intent or spy's or enablers acting on behalf of the enemy] may be incidental to or in furtherance of an uprising.")

Secondly, defendants acting on behalf of the IG, to provide material support to ARF was part of combatant activity. See *Johnson v. US*, 170 F.2d 767, 769-70(9th Cir 1949)("Combatant activities... would [therefore] include not only physical violence, but activities both necessary to and in direct connection with actual hostilities. The act of supply of ammunition to fighting [soldiers] in a combat area during war is undoubtedly a combatant activity.") *Id* at 770. Defendants material support to ARF constituted "aiding others to swing the sword of battle during an armed revolutionary war." *Id* at 769.

In *US v. Caltex*, 344 U.S.149, 153-54 (1952), the court held that "whatever would embarrass or impose the advance of the enemy as the breaking up of roads or the burning of bridges [buildings], or would cripple and defeat him, as destroying his means of subsistence [taxes and lockdowns], were lawfully ordered by the commanding general...

5

The necessities of the war called for and justified this" *Id* at 154. The U.S., despite failure to address the root cause of the crisis, has persistently enumerated a list of acts that "the necessities of the war called for and justified".  Also, the U.S continues to state that it sympathizes with the affected population but claims the people's plight is irrelevant to this litigation. In addition, the Government notes: "Next, defendants had reasonable, legal alternatives to violating the law by engaging in political advocacy and diplomacy..." (see Doc 160, p18). Such a suggestion to an ongoing emergency makes political advocacy and diplomacy sound like a 911 call that can handle an international emergency when the destination's local call operator is your aggressor. Defendants direct the court to their second motion (Doc 155, p7-8) regarding the short term and long term solutions engaged by defendants and their IG, especially the Switzerland-led mediation talks,

### 4. Theory of Defense

Defendants' proffered evidence speaks to the totality of circumstances facing the Cameroon rebellion. This evidence establishes facts to be examined as a matter of law and issues to be presented to the jury. Defendants  pray the court  take judicial notice of the attached documents to help the court make a determination regarding their defenses (see Doc 155, at  pp 2-6).

Defendants' proposed lawful combatant immunity defense is codified under Additional Protocol I and the International Humanitarian Law of Armed Conflict. See Protocol Additional to the Geneva Convention of 12 August 1949, relating to the protection of victims of international armed conflict, June 8, 1977, 1125 U.N.T.S 3, Art 1(4), The Cameroon rebellion is a self-determination struggle of the Anglophone minority population. Defendants only got involved after the people had invoked this protocol of

6

80884066.v1
Case 4:22-cr-00261-RK     Document 165     Filed 08/22/25     Page 6 of 9

which Cameroon is a signatory. The U.S has conceded the people's declaration of independence on October 1, 2017, as relevant, but continues to argue that the crisis is non-international. Assuming that the crisis is non-international, it does not take away the political uprising components. If the case proceeds to trial, defendants will invoke the lawful combatant immunity defense under international law alongside other defenses.

As to the imminency requirement, defendants direct the court to their proffered evidence speaking to the brutal and violent nature of the Cameroon crisis. Since October of 2016, the Anglophone territory has stayed in imminent and impending ongoing threats. The situation developed from an insurrection to a political uprising that turned into a revolutionary war of independence. At no time did the imminency of danger in this affected region decline or cease. The U.S confirms the magnitude and ongoing nature of the crisis in its brief response (See footnote 3 Doc 160, at p. 8). Defendants' loved ones, relations and community members were under serious gunfire and deadly threats.

The 2023 report of activities came in while defendants were already incarcerated. This report reinforces the proof that defendants engaged in the crisis to ameliorate the situation. While the marginalization of the English-speaking Cameroonians has been ongoing for over half a century, at no time in contemporary history has the entire region faced imminent and ongoing danger like the crisis since 2016.

Once more, defendants reiterate that since October 2016, the entire Anglophone region has been in war, not just imminent danger, but real crisis (armed struggle) with more than 10,000 deaths, including defendants' loved ones and blood relations. Due to the nature of the crisis and the immediate need to prevent further harm, defendants acting as a community and a de facto government provided material support of a defensive and

7

80884066.v1

Case 4:22-cr-00261-RK    Document 165    Filed 08/22/25    Page 7 of 9

humanitarian nature to their community during a revolutionary war of independence. Defendants material support can be categorized into cash resources, which was accessible within minutes of dispatch, and equipment. which typically took weeks to source locally or a little over months to ship. The revolution has entered its eighth year and the danger remains imminent.

Wherefore, defendants pray the court take judicial notice of the aforementioned facts and documents, pre-admit the same as motion in limine, and permit defendants to proceed on their proposed theories of defense and for all further relief the court deems proper and just.

Dated: August 22, 2025

Respectfully filed by counsel at instruction of Defendants,

By: */s/ Steve Moss*
Steve Moss
Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER OFFICE
1000 Walnut, Suite 600
Kansas City, MO 64106
Telephone: 816-471-8282
steve_moss@fd.org

**Attorney for Defendant Chi**

By: */s/ Jackson R. Hobbs*
Jackson R. Hobbs, MO #71004
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: 816-292-2000
Facsimile: 816-292-2001
Jackson.hobbs@lathropgpm.com

**Attorney for Defendant Chenyi**

8

80884066.v1

Case 4:22-cr-00261-RK    Document 165    Filed 08/22/25    Page 8 of 9

By:    */s/Lindsey Ikram*
J. Lindsey Ikram
WOOD IKRAM LAW FIRM
1201 NW Briarcliff Pkwy., Suite 325
Kansas City, MO 64116
Telephone: 816-875-4649
Fax: 816-466-5009

**Attorney for Defendant Langmi**

## CERTIFICATE OF SERVICE

The undersigned hereby certified that on August 22, 2025, a copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Western District of Missouri, which electronically notifies all counsel of record.

*/s/ Jackson R. Hobbs*
An Attorney for Defendant