IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:22-cr-00261-RK |
| FRANCIS CHENYI, SR., | ) ) ) |
| Defendant. | ) ) |

**SUR-REPLY IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR JUDICIAL NOTICE AND PROPOSED THEORIES OF DEFENSE**

After submitting its initial briefing, the Court ordered an evidentiary hearing (Doc. 166) relating to Defendants' Second Motion for Judicial Notice (Doc. 155), and in lieu of a hearing, each defendant submitted its proffered evidence in support of the motion (Docs. 167, 168, 169). After those submissions, the Court ordered the Government and Defendants to file a sur-reply concerning the motion. (Doc. 170). Defendants submit this sur-reply in support of their Second Motion for Judicial Notice (Doc. 155), and in support of said motion, state as follows:

**INTRODUCTION**

Defendants' proffered documents speaks to the facts of the Cameroon crisis based on the totality of the circumstances. The documents contain undisputed facts by both parties to this litigation as this facts are drawn from public records of the U.S political branches that are "capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." See Fed. R. Evid. 201.

Defendants' proffered documents granting pre-admission will establish basic facts that when put together will prove that defendants' conduct are acts incidental to a primary illegality that is egregious, or acts in furtherance of a political objective (aka The Peoples

Uprising). See Fed R. Evid. 104(b). These documents lay the foundation to prove issues of unlawful use of force, egregious governmental conduct that shocks the conscience, and evidence of a violent political disturbance (The Peoples Uprising) that created a new State "The Republic of Ambazonia." See *Huddleston v. United States*, 485 U.S. 681, 691 n.7 (1988) (Rule 104(b) "specifically authoriz[es] the judge to admit the evidence 'subject to' proof of the preliminary fact. It is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition.").

Defendants have come forth with allegation of Cameroon government's primary illegality and outrageous governmental conduct that was very coercive and egregious. This conduct plunged an ethnic people into an uprising. The people's uprising and its effect can be tied to a colorable argument that the political offense exception or the Fifth Amendment exception which applies to those fighting government oppression is a valid proposition. Defendants insist their indigenous people's uprising against the government of Cameroon qualify as "acts of a political character" and falls under the Fifth Amendment exception as "acts of a military or militia when in actual service in time of war or public danger." U.S. Const. amend. V. The Ambazonia Restoration Forces ("ARF") are engaged in a legitimate cause aimed at liberating their freedom from a totalitarian regime. See *American Communications Ass'n, CIO. v. Douds*, 339 U.S 382, 439-40 (1950) ("The men who led the struggle forcibly to overthrow lawfully constituted British authority found moral support by asserting a natural law under which their revolution was justified....") *Id*. at 439-40. See also, Thomas Jefferson, The Declaration of Independence Para. I (July 4, 1776) ("We hold these truths to be self-evident .... That whenever any government becomes

destructive of these ends [life, liberty and the pursuit of happiness] it is the right of the people to alter or abolish...").

Granting these allegations, subjecting legitimate acts of war to be prosecuted and or tried by a jury is unconstitutional under these facts and circumstances. See *Reid v. Covert*, 354 U.S. 1, 22 (1957) ("The Fifth and Sixth Amendments requires that certain express safeguards, which were designed to protect persons from oppressive governmental practices shall be given in criminal prosecution..."). The U.S government has conceded some facts as relevant. (See Doc 146, P.8; Doc 160, P.6). However, such relevancy cannot be properly explained to the jury absent the cause of the conflict being unlawful use of force, egregious governmental conduct and a revolutionary uprising of the people. Defendants only provided material support after the conflict became international following the declaration of independence. ARF possess an inalienable right to resist and abolish tyrannical government that controls their lives. ARF rising up as militias of a free state qualifies under the Fifth amendment exception, and/or political offense exception under international law.

## **ARGUMENT**

The Court should grant defendants' Second Motion as the proffered documents are public records that are "capable of immediate and accurate determination by resort to easily accessible source of indisputable accuracy." Fed. R. Evid. 201; see also *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) More so, the documents speak specifically to each Defendants' understanding of the Cameroon Crisis—which will be offered to defeat any intent element of the charges against them. Pre-admission of these documents will facilitate management of judicial resources at trial. Proffered documents

are offered under Rule 104 and buttress the proffered testimony of Defendants to establish their affirmative defenses.

## I. THEORIES OF DEFENSE

### a. Self Defense and Defense of Others.

Defendants maintain they are entitled to a collective self-defense and defense of others instruction based on the evidence on the following grounds: The presence of coercive conditions (i.e. the unlawful use of deadly force by the Cameroon authorities on peaceful protesters and civilians taking no part in hostilities). The indiscriminate use of deadly force by a government violates both national and international laws. Defendants acting as the "political chain of command to a de facto nation" has the inherent right to self-defense and the defense of their people. Defendant's organization was a party to the Cameroon crisis and can invoke the right to collective self-defense as a nation. *United Nations Security Council Resolution* 1373 of Sept. 28, 2001 ("[R]eaffirming the inherent right of individual and collective self-defense as recognized by the Charter of the United Nations."). See also, LaFave & Scott, *Substantive Criminal Law Section 5.4*, at 663-64 (1986) ("One is justified in using reasonable force in defense of another person, even a stranger, when he reasonably believes that the other is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger.").

"One is entitled to stand his grounds and use such force as is reasonable necessary under the circumstances to save his life or protect himself from serious bodily harm, if he reasonably believes such danger is imminent." *United States v. Farlee,* 757 F.3d 810, 817 (8th Cir. 2014). Defendants have offered sufficient evidence (i.e. "more than mere scintilla

4

81224874.v1
Case 4:22-cr-00261-RK    Document 174    Filed 10/14/25    Page 4 of 11

of evidence") that speaks to the nature and volume of brutalities and violence that amounted to the need for self-defense or the defense of others as a community. *United States v. Davidson,* 108 F.4th 706, 710 (8th Cir. 2024). Turning a blind eye to the actions of [foreign] government that affects a U.S citizen's family overseas, "conduct that is 'intended to injure in some way unjustified by any gov't interest' is likely to be conscience shocking". *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790,797 (8th Cir. 1998). The alleged conduct here was "[an egregious] exercise of power without any legitimate governmental objective." *Id*. To deny defendants an instruction on self-defense or the defense of others will be fundamentally unfair and prejudicial under the circumstances of this case. The viability of Defendants' defense cannot be determined absent a fact-specific inquiry which proffered documents aids that determination.

### b. Coercion or Duress.

Defendants insist their conduct was due to the coercive nature of the Cameroon crisis. The actions of the adversary psychosocially coerced defendants into providing material support to their families. To aid in the defense of one's family, defendants need not be physically coerced or threatened. Defendants assert they had credible fear of harm or death to others and were thus mentally coerced to come to the aid of their families and loved ones. See LaFave & Scott, *supra* at 615 n.6 ("Whereas, in a third party coercion, the defendant[s] take any course of action that aids the third party to neutralize the threat or subdue it."); see also *Leyra v. Denno*, 347 U.S. 556, 558 (1954) speaking as to how a defendant can establish a due process violation absent physical force, given such violations can be based on mental coercion. Therefore, the question should rather be whether Cameroon's egregious governmental conduct was so coercive as to have induced an

5

81224874.v1
Case 4:22-cr-00261-RK    Document 174    Filed 10/14/25    Page 5 of 11

otherwise innocent citizen to become involved in the alleged crimes? See *Lyons v. Oklahoma*, 322 U.S. 596, 602 (1944) ("Where there is a dispute as to whether the acts which are charged to be coercive actually occurred, or where different inferences may fairly be drawn from admitted facts ...") *Id*. at 602.

The government argues Defendants had other legal alternatives short of the actions described in the indictment, but Defendants group have actively involved the U.S political branch in their advocacy agenda, leading to the proffered public documents. Additionally, to act under imminent threats does not require one to pursue alternatives that are not relevant to stop the threatened harm immediately. See Model Penal Code Section 3.04(1) describing the essential question as whether the response must be "immediately necessary."

### c. Lawful Combatant Immunity.

Defendants are mindful of this Court's prior orders concerning lawful combatant immunity (Doc. 126, 160). However, based on the additional proffered evidence, Defendants submit that they are entitled to lawful combatant immunity as a defense. Defendants have asserted that the Republic of Ambazonia is a de facto state under international law and has inherent rights to defend itself as a nation. See Restatement (Third) of Foreign Relations Law, Section 201 and 202 cmt b (1987). Also see Convention on Rights and Duties of States (Montevideo Convention), Dec 26, 1933, Art I, 49 stat. 3097, 3100, 165 L.N.T.S 19, 25 ("entities that have all the characteristics of a State, such as a defined territory... but lacks widespread international recognition qualifies as a de facto State."). Defendants requested lawful combatant defense is codified under Additional Protocol to the Geneva Conventions of 12 August 1949, relating to the protection of victims of international armed conflicts (aka Protocol I) Art 1(4)("the situations referred to in the

6

81224874.v1
Case 4:22-cr-00261-RK    Document 174    Filed 10/14/25    Page 6 of 11

preceding paragraph include armed conflicts in which peoples are fighting against colonial domination and alien occupation and against racist regimes in the exercise of their right of self-determination, as enshrined in the charter of the UN..."); See also Art 1(3)("this protocol which supplements the Geneva Convention of 12 August 1949 for the protection of war victims shall apply in the situation referred to in Art 2 common to those conventions.").

Firstly, Ambazonia need not be a signatory to Protocol I before acting to defend itself from Cameroon aggressions since Cameroon is the High Contracting Party and signatory in this crisis. See Carlos M. Vazquez, Treaty-Based Rights and Remedies of Individuals, 92 Colum. L. Rev. 1082, 1143 (1992) ("A treaty that does not itself confer a right of action ... is not for that reason unenforceable in the courts. A right of action is not necessary if the treaty is being invoked as a defense."); accord *Hamdan v. Rumsfeld*, 548 U.S. 557, 633 (2006) ("The Geneva Conventions] must be understood to incorporate at least the barest of those trial protections that have been recognized by customary international law"). At bottom, the Government's argument that all non-signatories cannot be protected under the Geneva Conventions would seem to indicate that any genocide or civil war—like the one in Cameroon—could never be protected under the Geneva Convention's international authority. Such a result seems tenuous.

The Geneva Convention Additional Protocol includes the rights set forth in Art 43 to participate in hostilities. Defendants believe and submit that the Interim Government of Southern Cameroon and ARF qualify as an organized resistance movement under Art 43(1) ("The armed forces of a "party to a conflict" consist of all organized armed forces, groups and units which are under a command responsible to that party for the conduct of its

subordinates, even if that party is represented by a government or an authority not recognized by an adverse party"). Therefore, Defendants are lawful combatants under Geneva Convention Additional Protocol I, Art 43(2) ("members of the armed forces of a party to a conflict... are combatants, that is to say, 'they have a right to participate directly in hostilities'''); See also *al-Marri v. Pucciarelli*, 534 F.3d 213, 316 (4th Cir. 2008)("The paradigmatic example of a combatant is a soldier who actively serves in his nation's military ... (hereinafter 'Protocol I').")

Finally, the determination of whether a person is a member of armed forces entitled to lawful combatant status [a right to participate directly in hostilities as in Art. 43(2)] is a factual issue (i.e. the existence of a command link from a party to the conflict to the alleged soldiers), rather than a political issue (i.e. being recognition by the adverse party). See Geneva Convention Additional Protocol I, Art. 45 ("A person who takes part in hostilities and falls into the power of an adverse party shall be presumed to be a prisoner of war... if he claims the status... or if the party on which he depends claims such status on his behalf").

Because such a determination is a factual issue, Defendants respectfully request that they be entitled to such a theory of defense at trial for the jury to consider. Defendants' support to ARF fighting oppression from a tyrannical government constitutes "aiding others to swing the sword of battle during an armed revolutionary war..." See *Johnson v. United States*, 170 F.2d 767, 769 (9th Cir. 1949). ARF constitute combatant activities as codified under 28 U.S.C. 2680(i). See *Johnson*, 170 F.2d at 770, *United States v. Caltex*, 344 U.S. 149, 153-54 (1952). None of these acts were carried out during ordinary times. Therefore, the court must review these actions under war time circumstances as opposed to peace times. ARF actions are relative political offenses. That is "common crimes that

are so intertwined with a political act that the offense itself becomes a political one." *Ordinola v. Hackman*, 478 F.3d 588, 596 (4th Cir. 2007).

The actions of ARF engaged in an armed struggle cannot be judged absent the totality of the circumstances. Their acts were combatant activities including the seizure of individuals belief to be hostile or take part in the hostilities. Further, it is the conduct of an individual in an armed conflict zone that determines whether the individual is participating in hostilities, and not their social or religious title. All individuals seized by ARF were taking part in hostilities. See U.S Dept. of State 2021 report on Cameroon, (Doc 142-6 at p. 216) speaking as to the undue influence of traditional rulers who were largely coopted by the ruling party. ("Traditional rulers, who received salaries from the government... and some reportedly compelled residents of their constituencies to prove they did not vote for an opposition candidate by presenting unused ballots..."). While traditional rulers are the people leaders, they lose this immunity once they join the oppressor. Hence, they can be seized if found in contempt or alleged to be participating as an enabler for the adversary. Defendants respectfully submit these issues permit them to seek the affirmative defenses as discussed herein.

## CONCLUSION

Wherefore, defendants pray the court take judicial notice of the aforementioned facts and documents, pre-admit the same as motion in limine, and permit defendants to proceed on their proposed theories of defense and for all further relief the court deems proper and just.

Dated: October 13, 2025

Respectfully filed by counsel on behalf of Defendants,

By:   */s/ Steve Moss*
    Steve Moss
    Assistant Federal Public Defender
    FEDERAL PUBLIC DEFENDER OFFICE
    1000 Walnut, Suite 600
    Kansas City, MO 64106
    Telephone: 816-471-8282
    steve_moss@fd.org

**Attorney for Defendant Chi**

By:   */s/Lindsey Ikram*
    J. Lindsey Ikram
    WOOD IKRAM LAW FIRM
    1201 NW Briarcliff Pkwy., Suite 325
    Kansas City, MO 64116
    Telephone: 816-875-4649
    Fax: 816-466-5009

**Attorney for Defendant Langmi**

By:   */s/ Jackson R. Hobbs*
    Jackson R. Hobbs, MO #71004
    LATHROP GPM LLP
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108-2618
    Telephone:  816-292-2000
    Facsimile:   816-292-2001
    Jackson.hobbs@lathropgpm.com

**Attorney for Defendant Chenyi**

## CERTIFICATE OF SERVICE

The undersigned hereby certified that on October 13, 2025, a copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Western District of Missouri, which electronically notifies all counsel of record.

<u>*/s/ Jackson R. Hobbs*</u>
An Attorney for Defendant