IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:22-cr-00261-RK |
| (1) CLAUDE NGENEVU CHI, | ) |
| (2) FRANCIS CHENYI SR., | ) |
| (3) LAH NESTOR LANGMI, | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' joint second motion for judicial notice and advanced motion in limine to admit evidence in support of proposed theories of defense ("pre-trial motion"). (Doc. 155.)[1] The United States filed suggestions opposing Defendants' motion, (Doc. 160), and Defendants filed a reply, (Doc. 165). At Defendants' request (Doc. 165 at 1), the Court set the matter for an evidentiary hearing. (Doc. 166.) In lieu of an evidentiary hearing, each Defendant instead submitted a proffer statement. (Docs. 167, 168, 169.) At the parties' request, the Court permitted additional briefing on Defendants' pre-trial motion in light of Defendants' proffer statements. (Docs. 173, 174.)[2] After careful consideration and review of the full record, including the parties' briefs and evidentiary proffers, and for the reasons explained below, the Court **ORDERS** that Defendants' pre-trial motion is **DENIED**.

### Background

Defendants Claude Ngenevu Chi; Francis Chenyi, Sr.; and Lah Nestor Langmi were charged with several violations of federal criminal law in a four-count Indictment returned by a grand jury based on various activities and actions they are alleged to have undertaken in support of armed separatist forces within the Republic of Cameroon in the so-called Anglophone region. (*See generally* Doc. 1.) The Indictment charges Defendants (all of whom are naturalized U.S.

---

[1] Defense counsel indicates that this motion was filed by counsel specifically at the instruction of each Defendant.

[2] The Court notes that Defendants' initial motion and replies were each filed by defense counsel as specifically instructed by Defendants. (*See* Doc. 155 at 2; Doc. 165 at 1, 8; Doc. 174 at 10.)

citizens residing at all relevant times within the United States) with the following four counts: Count 1 – conspiracy to provide material support or resources to terrorists in violation of 18 U.S.C. § 2339A(a); Count 2 – providing or attempting to provide material support and resources to terrorists in violation of 18 U.S.C. § 2339A(a); Count 3 – receiving money from a ransom demand in violation of 18 U.S.C. § 880; and Count 4 – conspiring to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(2)(A) and (h).[3] In short, Defendants are alleged to have provided unlawful material support and resources by soliciting, raising, and transferring funds to support activities by armed separatist forces—specifically, the Ambazonian Restoration Forces—against the Cameroonian government, as well as having conspired to kidnap Cameroonian civilians and hold them for ransom, sometimes to be collected from U.S.-based relatives. (*See generally* Doc. 1.) Defendants each served in various leadership and other public-facing roles in the county or "national" anti-government organizations supporting the anti-government Ambazonian Restoration Forces. A jury trial is currently set for December 1, 2025.

## Discussion

From the start, Defendants have relied on the underlying political nature of the ongoing conflict in Cameroon between the Cameroonian government and the separatist forces of the Anglophone region of Southern Cameroon in their defense of the charges or their pre-trial detention in this case. Defendants' second motion for judicial notice and advanced motion in limine seeks judicial notice of facts and documents relevant to asserted affirmative defenses of: lawful combatant immunity under international law, as well as justification defenses for self-defense, defense of others, and coercion/duress "based on the Cameroon government's outrageous conduct." (Doc. 155 at 6.)[4] In its response, the United States seeks an *in limine* ruling that precludes Defendants from asserting and obtaining instructions for these defenses. (Doc. 160 at 4.)

---

[3] All three Defendants are charged in Counts 1, 3, and 4; only Defendants Chi and Chenyi are charged in Count 2.

[4] The joint motion also refers to the "Political Offense Doctrine." (Doc. 155 at 4 n.1.) This doctrine is inapplicable here to the extent it operates as a bar to prevent extradition. *See generally, e.g.*, *Ordinola v. Hackman*, 478 F.3d 588, 595-97 (4th Cir. 2007); *Vo v. Benov*, 447 F.3d 1235 (9th Cir. 2006).

In addition, the Court notes that to Defendants' "political" arguments more generally, the Court has previously recognized that the charges in the Indictment—and particularly those arising under 18 U.S.C. § 2339A(a)—do not require any "political issue determination regarding the nature of the rebellion in Cameroon . . . ." (Doc. 126 at 10; *see* Doc. 133 (adopting the Report and Recommendation in full).)

2

I. **Legal Standard**

The Eighth Circuit has "consistently permitted pre-trial determinations as to whether a particular [affirmative] defense is available." *United States v. Davidson*, 108 F.4th 706, 710 (8th Cir. 2024); *see also* Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense . . . or request that the court can determine without a trial on the merits."). "To be entitled to a justification defense, a defendant must show an underlying evidentiary foundation as to each element of the offense, such that a reasonable person could conclude that the evidence supported the defendant's position." *United States v. Farah*, 899 F.3d 608, 614 (8th Cir. 2018). Similar to the Court's prior order as to the first motion for judicial notice and advanced motion in limine, the Court will first consider whether the proffered defenses are available; if they are not, "Defendants' request[s] for judicial notice and pre-admission of the proffered facts and documents as relevant to the [proffered defenses] necessarily fall[] by the wayside." (Doc. 153 at 4.)

II. **Lawful Combatant Immunity**

Defendants first assert that they are entitled to the so-called "lawful combatant immunity defense" recognized under international law. *See United States v. Harcevic*, 999 F.3d 1172, 1179 (8th Cir. 2021). As the Court has previously explained—and as Defendants acknowledge in their pre-trial motion—whether this defense applies depends on whether the underlying conflict is classified as an international or non-international armed conflict under the Third Geneva Convention Relative to the Treatment of Prisoners of War. *See id.* at 1176; *United States v. Hamidullin*, 888 F.2d 62, 71 (4th Cir. 2018). This Court has found in prior proceedings in this case that the underlying conflict in Southern Cameroon or the Anglophone region is classified as a non-international armed conflict under the relevant provisions of international law. (Doc. 101 at 4-5.) The Court finds no reason to depart from that finding here.

Defendants' assertion that they are entitled to the defense of lawful combatant immunity under international law relies on application of the Additional Protocols to the Geneva Conventions of 1949 Relating to the Protection of Victims of International Armed Conflicts ("Protocol I"), June 8, 1977, 1125 U.N.T.S. 609, which was signed by the United States but never ratified. *See In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 129 (E.D.N.Y. 2005). Protocol I, in effect, "extended the applicability of international humanitarian law so that the whole of the [Geneva] Conventions applied to conflicts for national liberation" by "reclassify[ing] [certain internal conflicts] as international conflicts, even though the actors remained non-state armed groups."

3

Dawn Steinhoff, *Talking to the Enemy: State Legitimacy Concerns with Engaging Non-State Armed Groups*, 45 Tex. Int'l L.J. 297, 311 (2009); *see* George H. Aldrich, *Prospects for United States Ratification of Additional Protocol I to the 1949 Geneva Conventions*, 85 Am. J. Int'l L. 1 (1991).[5]

Some federal courts in the United States have declined to apply Protocol I, however. *See United States v. Buck*, 690 F. Supp. 1291, 1296-1303 (S.D.N.Y. 1988). Moreover, while Defendants suggest that *some* provisions of Protocol I have been recognized by the United States government as constituting customary international law, *see Gherebi v. Obama*, 609 F. Supp. 2d 43, 57 n.10 (D.D.C. 2009), Article 1(4)—on which Defendants' assertion of lawful combatant immunity rests here—does not appear to have been similarly recognized by the United States as constituting customary international law. *See* David E. Graham, *Defining Non-International Armed Conflict: A Historically Difficult Task*, 88 Int'l L. Stud. 43, 46 (2012) (recognizing that this provision of Protocol I has *not* been recognized by the United States as part of customary international law). The crisis in Cameroon is widely viewed as a non-international armed conflict.[6] In short, Defendants have not presented a persuasive legal argument showing that they are entitled to the defense of lawful combatant immunity under international law to the federal charges asserted against them. The pre-trial motion is accordingly denied in this regard.

### III. Justification Defenses – Self-Defense, Defense of Others, Coercion/Duress

Next, the Court considers Defendants' pre-trial motion seeking to proceed at trial on various justification defenses. To pursue a justification defense at trial, "a defendant must show an underlying evidentiary foundation as to each element of the offense, such that a reasonable person could conclude that the evidence supported the defendant's position." *Farah*, 899 F.3d at 614. The Eighth Circuit has found that it is not error to "require [a defendant] to provide a pre-trial proffer on the issue of self-defense" so that the Court may determine whether the defendant can proffer sufficient evidence at trial to satisfy the defendant's burden of production. *Davidson*,

---

[5] Specifically Article 1(4) provided re-classification as an international conflict under the Geneva Conventions "armed conflicts in which peoples are fighting against colonial domination and alien occupation and against racist regimes in the exercise of their right of self-determination . . . ." Aldrich, *supra*, at 5.

[6] *See Non-International Armed Conflicts in Cameroon*, RULAC, (Jan. 12, 2023), https://www.rulac.org/browse/conflicts/non-international-armed-conflict-in-cameroon#collapse5accord [https://perma.cc/MH5R-NAE8].

108 F.4th at 710. The Court accordingly considers Defendants' proffers filed in lieu of testimony at an evidentiary hearing, as well as the previously submitted materials attached to or referenced in the pre-trial motion.

Defendants seek to proceed at trial on a theory of self-defense or defense of others. "If a person reasonably believes that force is necessary to protect himself or another person from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he acted in self defense or defense of another person." *United States v. Farlee*, 757 F.3d 810, 815 (8th Cir. 2014) (quotation marks omitted). To be entitled to proceed on a theory of self-defense, a defendant's pre-trial proffer must include sufficient evidence, "viewed in the light most favorable to him," that "he acted out of a reasonable belief that danger was *imminent*, or in other words . . . that danger was *about to be inflicted* . . . ." *Davidson*, 108 F.4th at 710, 711 (quotation marks omitted; emphasis added); *see Farah*, 899 F.3d at 615 (same imminency requirement for defense of others)

Defendants also seek to proceed at trial on an additional theory of coercion or duress. To be entitled to pursue this affirmative defense at trial, Defendants must proffer sufficient evidence to establish: (1) they were "under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," (2) they "had not recklessly or negligently placed [themselves] in a situation in which it was probable that [they] would be forced to commit a criminal act," (3) they "had no reasonable, legal alternative to violating the law," and (4) "that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm." *United States v. Diaz*, 736 F.3d 1143, 1150 (8th Cir. 2013) (quotation marks omitted). Like the justification defenses of self-defense and defense of others, "[d]uress requires more than a generalized and speculative fear of violence," and a defendant must show "a present, imminent, and impending threat." *United States v. Sharron*, 986 F.3d 810, 814, 815 (8th Cir. 2021) (quotation marks omitted).

After careful consideration and review of the proffered evidentiary material and statements, the Court finds that Defendants have not satisfied their burden of production to be entitled to pursue these affirmative defenses at trial as a matter of law. Defendants' documentary and testimonial proffers with their pre-trial motion make clear that the basis for asserting these various justification defenses rests on their alleged belief of a danger from the Cameroonian governmental forces to the

5

community or their family members residing in the Anglophone region generally. Rather than acting in the context of some "immediate and specific threat" to particular persons, the Defendants' actions in the conspiracy charged here were taken in response to the ongoing nature of the conflict in general and the Cameroonian government's historical violence against members of the community to which Defendants have personal, familial, and ethnic ties. In short, "their purported justification pertain[s] only, in the most general terms, to [the ongoing internal conflict] and civilian suffering" at the hands of the Cameroonian government in general, which is not sufficient to be entitled to these justification defenses to Defendants' individual criminal liability. *Farah*, 899 F.3d at 615-16.[7]

Moreover, as to coercion/duress specifically, Defendants acknowledge that they "have actively involved the U.S. political branch in their advocacy agenda, leading to the proffered public documents," but suggest only that further advocacy would not "stop the threatened harm immediately." (Doc. 174 at 6; *see* Doc. 167 at 3.) Other than their subjective beliefs that advocacy would be ineffective or inefficient to address the Cameroonian government's allegedly violent and unlawful actions in Southern Cameroon, Defendants do not point to any evidence that they lacked legal alternative avenues to avoid the threat alleged. *See United States v. Ladeaux*, 61 F.4th 582, 587 (8th Cir. 2023); *United States v. Harper*, 466 F.3d 634, 648 (8th Cir. 2006) ("a defendant's subjective belief that going to law enforcement would prove futile is insufficient to meet the objective standard that there was no reasonable, legal alternative to violate the law" by possessing stolen firearms).

Because Defendants have not satisfied their burden at this pre-trial stage to proffer a sufficient evidentiary foundation as to these affirmative defenses on which they seek to rely at trial, the Court finds that as a matter of law Defendants are not entitled to pursue the affirmative defenses of self-defense, defense of others, and coercion or duress at trial.

---

[7] As best as the Court can discern, Defendants assert these justification defenses in the collective (rather than individual) sense. Defendants provide no legal authority in support of an assertion of "collective" self-defense, defense of others, or coercion or duress, other than their reliance on lawful combatant immunity under international law, which the Court finds is not available as a defense to these criminal charges as a matter of law.

## Conclusion

After careful consideration and for the reasons explained above, the Court **ORDERS** that Defendants' joint second motion for judicial notice and advanced motion in limine to admit evidence in support of proposed theories of defense, (Doc. 155), is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: October 27, 2025