IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-00261-02-CR-W-RK |
| FRANCIS CHENYI, SR., | |
| Defendant. | |

**GOVERNMENT'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE, AFFIRMATIVE MOTION IN LIMINE, AND TRIAL BRIEF**

The Government submits this omnibus Suggestions in Opposition to Defendant Francis Chenyi Sr.'s ("Chenyi") Motion in Limine, its own affirmative Second Motion in Limine to bar evidence sought to be introduced as set forth in Chenyi's Motion in Limine and Exhibit List, and its Trial Brief to identify and preview the evidence and potential legal issues it expects the Court may confront in the upcoming trial of Chenyi, which is scheduled to begin on December 1, 2025.

**I.  INTRODUCTION**

The parties are proceeding to trial on three counts.[1] Count One of the Indictment alleges that Chenyi, while in and being a citizen of the United States, illegally conspired with his co-defendants Claude Chi ("Chi"), Nah Nestor Langmi a/k/a Langmi Nestor ("Langmi"), and others to provide material support and resources to fighters engaged in an internal violent conflict in Cameroon knowing and intending they would be used in a conspiracy to kill, kidnap, or maim persons in a foreign country, in violation of 18 U.S.C. § 956(a), and/or a conspiracy to use a weapon of mass destruction ("WMD") outside of the United States, in violation of 18 U.S.C. § 2332(a). *See* Doc. 1. Chenyi conspired with others to provide material support by raising and transferring

---

1 Count Three was dismissed by the United States on November 3, 2025. Doc. 179.

funds as well as components of improvised explosive devices ("IEDs") he mailed from the United States to fighters of the so-called Ambazonian Restoration Forces ("ARF") in Cameroon intending those items be used to further these conspiracies. Doc. 1.[2]

Count Two alleges that Chenyi and Chi attempted, and did, provide material support and resources while within the United States to others intending that they be used to prepare for and carry out a conspiracy to use a weapon of mass destruction outside of the United States in violation of 18 U.S.C. § 2332(a). *See* Doc. 1. This substantive count relates to a payment Chenyi sent with the intent to fund the construction and use of an IED attack around elections in Cameroon. Finally, Chenyi is also alleged at Count Four to have conspired to transfer funds from the United States to a place outside the United States—that is, Cameroon—with the intent to promote the same Predicate Offenses listed at Count One.[3] 18 U.S.C. § 1956(a)(2)(A) and (h).

Chenyi has filed a Motion *in Limine* ("Motion") in which he contends that only evidence relevant to the conspiracies charged in the Indictment be admitted, Doc. 191 at 4-5, and contends that some of the digital evidence the United States may offer may contain inadmissible "hearsay within hearsay." Doc. 191 at 5. The United States will set forth below the law on admission of co-conspirator statements and will establish through, among other evidence, Chenyi's own admissions, the vast scope of the conspiracy as well as some of its participants and is confident all of the exhibits and evidence it intends to introduce are admissible.

---

[2] The United States does not need to prove that the charged defendant committed a violation of these predicate offenses to Count One of 18 U.S.C. § 956(a) and 18 U.S.C. § 2332(a), just that he conspired to provide material support to commit them. Further, the United States will refer collectively to the two predicate offenses as "the Predicate Offenses."

[3] Chenyi's Motion incorrectly cites Count Four's elements. *See* Doc. 191 at 3. The United States need only prove for Count Four under § 1956(a)(2)(A) and (h) that Chenyi conspired to conduct a financial transaction with the intent to promote and carry on a specified unlawful activity. *See* § 1956(a)(2)(A) and (h); Doc. 1.

Chenyi's Motion next seeks to justify admission of the items listed on his Exhibit List. *See* Doc. 191 at 6-9; Doc. 189. But his argument as to why his 43 exhibits are relevant has been rejected twice in pretrial litigation. *See* Doc. 133 (adopting Doc. 126); Doc 153. Thus, as set forth below, even if some of his exhibits were to fit within a hearsay exception, they are inadmissible because they are irrelevant.

## II. BACKGROUND

### A. *Anticipated Evidence.*

The United States believes that the evidence will largely be consistent with the facts set forth in the Indictment. The United States anticipates the evidence will set forth a basic background to the so-called Anglophone conflict, in which the ARF and other separatist groups have been engaged in civil unrest since roughly 2017 in the English-speaking Northwest and Southwest regions ("Anglophone Region") of Cameroon. Through expert testimony, the United States will show that the separatists aim originally was to gain political power and ultimately independence of those regions. The separatists also aim to impede the Cameroonian government's functioning in the Anglophone Region. To further these goals, separatist groups raise funds from the world-wide Cameroonian diaspora, conduct kidnappings for ransom, attack the civilian population, and use that money to buy firearms and components for improvised explosive devices ("IEDs") referred to as "popcorn."

The United States will next establish, as explained in the Indictment, that Chenyi held senior level positions within an organization that supported and directed the so-called ARF within Cameroon's Anglophone Region. The breadth of Chenyi's conspiracy is vast. It involves not just Langmi and Chi, but unindicted co-conspirators in Europe and in the so-called "ground zero" who

are using the funds and material Chenyi supplies just as Chenyi desires—to conduct kidnappings for ransom and build and use WMDs.

The United States also anticipates the evidence to show, as set forth in the Indictment, Chenyi, while in the United States and as a United States citizen, played a prominent leadership role in that conspiracy, raising funds for IED attacks abroad in Cameroon, financing projects related to IEDs, and providing strategic and tactical guidance to his unindicted co-conspirator fighters on the ground relating to employing IEDs. Additionally, Chenyi personally sent components such as remotes and igniters to Cameroon to be used in IED attacks. Chenyi also was involved in the kidnapping and ransoming of individuals in Cameroon, including the kidnapping of the Fon of Nso (a traditional leader) and Cardinal Christian Tumi.

   B.  *Brief review of pre-trial motion practice.*

On October 10, 2023, the defendant moved to dismiss Counts One and Two arguing despite the counts charging § 2339A violations, that "the government must show either that (1) the defendant knows that the organization has been designated a foreign terrorist organization or (2) the defendant knows that the organization is or has engaged in "terrorism" or in "terrorist activities." 18 U.S.C. § 2339B(a)." Doc. 108 at 12. The defendant also sought dismissal on the basis that he was entitled to the lawful combatant immunity affirmative defense.

On August 1, 2024, Magistrate Judge Lajuana Counts recommended that the motion be denied. Doc. 126. Judge Counts concluded that Counts One and Two do not require a "a connection between defendants and [a foreign terrorist organization]." Doc. 126 at 9 (quoting *United States v. Hodzic*, No. 4:15 CR 49, 2016 WL 11578530, at *10 (E.D. Mo. Aug. 22, 2016)). Judge Counts' report next determined that the lawful combatant immunity defense is unavailable to Chenyi under the Third Geneva Convention because the crisis in Cameroon is a non-

international conflict between government forces and various militia groups, including the defendant's ARF. *See* Doc. 126 at 10–11.

On January 13, 2025, the three defendants filed a Joint Motion for Judicial Notice, Advanced Motion *in Limine* to Admit Evidence, and Proposed Theory of Defense. Doc. 142. The defendants argued that they should be permitted to submit a "Theory of Defense" to the jury arguing that they cannot be convicted on Counts One and Two if they lacked a specific intent to aid a terrorist organization or activity. Doc. 142 at 5–6. Defendants also asked the Court to take judicial notice of and "pre-admit" a litany of "factual matters" and documents that they claimed supported their Theory of Defense. The Court's Order denying Defendants' motion reiterated Magistrate Judge Counts' conclusion that violations of 18 U.S.C. § 2339A (as charged in Counts One and Two) "and conspiracy to do the same, do not include any element related to 'terrorism,' as referring to a terrorist act or terrorist activity undertaken by or related to a terrorist organization or terrorist group." Doc. 153 at 6 (quoting *United States v. Leveille*, Case No. 1:18-cr2945-WJ, 2023 WL 5043875, at *3 (D.N.M. Aug. 8, 2023)). Rather, § 2339A requires only that the defendants furnish "material support or resources intended to be used for preparation or in carrying out 'a violation of statutes prohibiting violent terrorist *acts*.'" *See* 153 at 6 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 17 (2010)). Accordingly, the Court concluded, the defendants' Theory of Defense "is not supported as a matter of law and instead relies on an improper statement of the law." 153 at 6 at 7.

On June 17, 2025, Defendants filed a Second Joint Motion for Judicial Notice, Advanced Motion *in Limine* to Admit Evidence, and Proposed Theories of Defense, Doc. 155. The motion addressed four more theories of defense: lawful combatant immunity under international law; self-defense; defense of others; and coercion/duress of them here in the United States based on the

Cameroon government's conduct in Cameroon. *Doc.* 155 at 6. Broadly, the defendants claimed that their material support for the ARF was for "defensive and humanitarian purposes," and therefore legally excusable. *See* 155 at 8. The Court denied the motion on October 27, 2025. Doc. 176. The Court's order explained yet again that the defendants are not entitled to the defense of lawful combatant immunity under international law. Doc. 155 at 3–4. The Court further held that the defendants were not entitled at trial to the affirmative defenses of self-defense, defense of others, or coercion/duress. Doc. 155.

All of these rulings are now the law of the case that Chenyi may elect to appeal but not relitigate. To the extent his evidence, exhibits, or argument are seeking to establish these items the Court has already ruled as irrelevant or unavailable, this Court should exclude them.

III. **ANTICIPATED EVIDENTIARY AND LEGAL ISSUES**

    *A.    Hearsay, Co-Conspirator Statements, and Photographs.*

Chenyi's Motion contends that some of the evidence in the United States' case-in-chief is potentially inadmissible "hearsay-within-hearsay." Doc. 191. It is not. The conspirators spoke on WhatsApp text conversations, sent voice memos in English and Pidgin English amongst one another, and sent videos and pictures of their attacks and kidnapped victims as well. These chats were captured on electronic devices seized from Chenyi, Langmi, and Chi. The United States will offer extensive evidence of these WhatsApp chats, voice memos, photographs, and videos made by both indicted and unindicted co-conspirators and shared amongst indicted and unindicted co-conspirators. All of these items the United States will offer were made during and in furtherance of the conspiracy to provide material support to commit violations of 956 and 2332a.

A statement is not hearsay if it is "offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy[.]" Fed. R. Evid.

801(d)(2)(E); *see also United States v. Mayfield*, 909 F.3d 956, 960 (8th Cir. 2018) ("Codifying a hearsay exception that the Supreme Court described as 'steeped in our jurisprudence' in *Bourjaily v. United States*, 483 U.S. 171, 183 [ ] (1987), Rule 801(d)(2)(E) provides that a statement offered against an opposing party that 'was made by the party's coconspirator during and in furtherance of the conspiracy' is not hearsay."). The co-conspirator statement is admissible, and does not violate the Confrontation Clause, even when the statement is made by a non-testifying, unindicted co-conspirator, so long as it is made by a conspirator, during and in furtherance of the conspiracy. *See United States v. McCarthy*, 97 F.3d 1562, 1572 (8th Cir. 1996); *United States v. Lewis*, 759 F.2d 1316, 1339 (8th Cir. 1985) ("Logically then, Fed. R. Evid. 801(d)(2)(E) applies to both unindicted and unnamed coconspirators."); *United States v. Quintero*, No. CIV. 11-961 MJD, 2011 WL 2966272, at *5 (D. Minn. July 22, 2011) ("The Eighth Circuit has held that 'co-conspirators' statements made in furtherance of a conspiracy and admitted under Rule 801(d)(2)(e) are generally non-testimonial and, therefore, do not violate the Confrontation Clause as interpreted by the Supreme Court." (internal quotation marks and citation omitted)).

"Before admitting a coconspirator's statement under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence, and the district court must find, that there was a conspiracy involving the declarant and the nonoffering party, and the statement was made during the course and in furtherance of the conspiracy." *United States v. Mayfield*, 909 F.3d 956, 960 (8th Cir. 2018) (internal quotation marks and citation omitted). To accomplish this, the United States Court of Appeals for the Eighth Circuit "established a procedure to address these issues during a criminal trial." *Id.* (citing *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978)).

> After [the defendant] timely objected to [co-conspirator's] out-of-court statements, the district court provisionally admitted the statements and advised the parties, on the record at a side-bar conference, that the statements were admitted subject to defendant's objection, that the government was required to prove by a

> preponderance of the evidence that the statements were made during the course and in furtherance of the conspiracy, that the court will make an explicit determination as to admissibility at the conclusion of the evidence, and that, if the statements are not admitted, the court will declare a mistrial unless a cautionary instruction would suffice.

*Id.* (citing *Bell*, 573 F.2d at 1044).

Here, if Chenyi raises a specific objection as to the hearsay of a particular text message, the Court should "provisionally admit" the statements. *Id.* The United States will establish by a preponderance of the evidence the scope of the conspiracy and that the co-conspirator's statements it offers are during and in furtherance of the conspiracy. Chenyi's interview, for instance, outlines the scope of the conspiracy and identifies many indicted and unindicted co-conspirators. The United States anticipates another witness will also discuss the scope and participants of the conspiracy. Many of the statements and exhibits offered will be between Chenyi and Chi, or Chenyi and Langmi.[4] But others will be admitted because they are statements offered by unindicted co-conspirators to Chenyi, Langmi, or Chi manifested during and in furtherance of the conspiracy to provide material support. At the close of the United States' case, this Court should then find (1) that, based both upon the statements of the co-conspirators and independent evidence, a conspiracy existed; (2) that the declarants were members of the conspiracy; and (3) that the statements were made during and in furtherance of the conspiracy.

The United States will also admit photographs sent between the conspirators. Photographs are not statements, and thus not hearsay. *See United States v. Turner*, 934 F.3d 794, 798–99 (8th Cir. 2019). The United States will also admit videos. Some were recorded and sent to Defendants by separatist fighters. Others are simply videos of apparent IED use, which is the object for one

---

4 Any statement by Chenyi is an "admission [] of a party opponent, admissible under Federal Rule of Evidence 801(d)(2)(A)." *United States v. Coco,* 926 F.2d 759, 760 (8th Cir. 1991). Moreover, to the extent Chenyi or his co-conspirator's adopted a statement by, for instance, forwarding message of others, those also may be offered against him. *See* Fed. R. Evid. 801(d)(2)(B).

of the conspiracies. Yet others, were sent between Langmi and an unindicted co-conspirator in Cameroon who Langmi hired to construct IEDs to further the conspiracy to provide material support to use WMDs and kidnap, kill, and maim abroad in which Chenyi and Langmi were in together.

Finally, the co-conspirators kept extensive financial records. Chenyi notes that "word documents texted back-and-forth" are inadmissible hearsay. Doc. 191 at 5. However, these financial documents are "statements made to keep coconspirators abreast of an ongoing conspiracy's activities and 'satisfy the 'in furtherance' of requirement.'" *United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir. 2007).

    B.    *This Court Should Exclude Chenyi's Irrelevant Exhibits.*

Evidence must be "relevant" to be admitted. *See* Fed. R. Evid. 401, 402. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Then, even if evidence is relevant, Rule 403 provides that the court may exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice, jury confusion or unnecessary delay. Fed. R. Evid. 403.

The items listed in Chenyi's Exhibit List appears directed at establishing the individuals in Cameroon to whom he provided material support were not designated as a foreign terrorist organization ("FTO") and that he did not have the specific intent to support an FTO.[5] *See* Doc. 189. In his Motion, he focuses on why he believes some of these exhibits are admissible under the public records exception to the hearsay rule as public records. Doc. 191. As far as why those

---

[5] The United States points out that material support to an FTO is prohibited by 18 U.S.C. § 2339B, a crime with which Chenyi is not charged.

documents could be relevant under Rule 401, he contends they would be offered to show he did not "knowingly intend to provide material support or resources to a terrorist organization[.]" Doc. 191 at 8. Chenyi goes on to say that the question of whether he provided support to a "terrorist organization" is a "central question the jury will answer." Doc. 191 at 8.

However, that question will never be asked. That will never be a "fact of consequence in determining the action." Fed. R. Evid. 401. Indeed, this Court has already ruled twice that the United States need not prove that Chenyi supported an FTO or had the specific intent to fund terrorists. *See* Doc. 133 (adopting Doc. 126); Doc. 153 at 6. Yet, Chenyi's Motion makes clear he is yet again seeking to defend the case at trial based on this twice-rejected theory which "is not supported as a matter of law and instead relies on an improper statement of the law." Doc. 153 at 7. Thus, regardless of whether the items on Chenyi's Exhibit List items would otherwise fit into a hearsay exception, Doc. 191 at 6, they are irrelevant because they seek to either disprove an element that does not exist or support a defense this Court already ruled is unavailable as a matter of law.

Moreover, allowing Chenyi to litigate irrelevant issues—such as whether his co-conspirators are "terrorists" or the acts of the Cameroonian government in Cameroon—when the jury's focus need be on Chenyi's acts as a citizen of the United States in the United States, would cause unnecessary confusion, delay, and prejudice. The United States adopts its arguments made in briefing referenced above to establish why any exhibit Chenyi offers for the purposes of establishing the ARF or his other co-conspirators are not "terrorists," or he lacked the specific intent to fund terrorism, is irrelevant and inadmissible. *See* Doc. 116, 130.

## IV. CONCLUSION

WHEREFORE, the United States thus files this Trial Brief to outline the anticipated evidence and legal issues that may arise in trial;

FURTHER, the United States requests this Court *in limine* rule that any evidence sought to be admitted addressing the irrelevant element that Defendant Francis Chenyi, Sr. did not have the specific intent to fund an FTO or "terrorist" be excluded as irrelevant and unduly prejudicial.

Respectfully submitted,

R. Matthew Price
United States Attorney

By   /s/ *Sean T. Foley*

Sean T. Foley
Assistant United States Attorney

and

*/s/ Joseph M. Marquez*

Joseph M. Marquez
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on November 24, 2025, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/s/ *Sean T. Foley*
Sean T. Foley
Assistant United States Attorney